Brown, Administratrix, Appellant, v. Equitable Life Insurance Company of Iowa, Respondent.

*No. 150. Argued October 1, 1973.—Decided October 30, 1973.*
(Also reported in 211 N. W. 2d 431.)

621

For the appellant there were briefs by *Nowlan, Mouat, Lovejoy, Wood & Cripe*, attorneys, and *Richard E. Rosenberg* of counsel, all of Janesville, and oral argument by *Mr. Rosenberg.*

For the respondent there was a brief by *Wickhem, Consigny, Sedor, Andrews & Hemming, S. C.*, and *Gilbert D. Sedor*, all of Janesville, and oral argument by *Gilbert D. Sedor.*

HANLEY, J. The sole issue on appeal is whether the conditional receipt issued by the respondent insurance

company after payment of the first premium of $54.88 by the decedent created a contract of temporary insurance, effective as of the date of receipt which could be terminated only by notification to the decedent that his application for and temporary insurance was rejected because of his uninsurability, or whether the conditional receipt created a contract of insurance to become effective as of the date of receipt only after the respondent insurance company made a good faith determination that the decedent was insurable as a standard risk.

The conditional receipt is a sales device instituted by the life insurance industry whereby a life insurance company would warrant immediate coverage upon payment of the initial life insurance premium at the time of application and the satisfaction of various conditions precedent to coverage. Such conditions included insurability, acceptance by the company and actual receipt of the policy. This sales device was instituted to effectively block that which has at least historically been the offeror's prerogative—the revocation of his offer to purchase the life insurance policy. By requiring an initial down payment by the applicant prior to a determination of his insurability by the company, the individual offeror is precluded both monetarily and psychologically from either revoking his offer to purchase or from purchasing the same insurance from a rival company.

The conditional receipt as defined by the respondent is beneficial to the applicant also. If it is determined that coverage was afforded as of the date of application for such insurance and not some later date, if at all, then any change in the applicant's condition (*i.e.*, his death or his becoming uninsurable) will not result in a lack of coverage. This would not occur if the applicant were deemed to be uninsurable at the time of application and medical examination.

In the case at bar, the decedent, George W. Brown, was given a "satisfaction-type" [1] conditional receipt upon his tendering of the first month's premium of the policy. It is for this court to determine whether a contract of insurance arose immediately upon the applicant's tendering of said premium and completion of the application and medical examination, subject only to termination if it is in good faith determined that Brown is uninsurable, or whether, as the respondent contends, the company's satisfaction of Brown's insurability was a condition precedent to the affording of coverage by said company.

The courts in numerous jurisdictions have construed "satisfaction-type" conditional receipts similar to the conditional receipt here involved. A minority of these courts have held that the conditional receipt gives rise to an interim contract of insurance, said insurance being

[1] "THE PAYMENT FOR WHICH THIS CONDITIONAL RECEIPT IS GIVEN PROVIDES INSURANCE ONLY AFTER ALL OF THE FOLLOWING CONDITIONS ARE FULLY MET:

"1. The first premium for the policy is paid in full with Part 1 of the application bearing the same serial number and date as this receipt; and

"2. The Company at its Home Office is satisfied, after investigation, that on the effective date defined below the person or persons to be insured are insurable under the Company's rules and practices for the amount of insurance on the plan applied for (including additional benefits if any), and at the rate of premium paid with Part 1 of the application; and

"3. . . .

"Subject to the above conditions, the insurance shall be effective on the last of the following dates: the date of this receipt, the date of Part 2 of the application, or the date of the last of any medical examinations or tests required under the rules and practices of the Company. If the above conditions are not fully met or if Condition (2) above is not met within 60 days of the date of this receipt or the date of Part 2, if later, or if the insurance is declined by the Company within said 60-day period, then there shall be no liability on the part of the Company except to return this payment upon surrender of this Conditional Receipt."

terminable upon the company's good faith determination that the applicant is uninsurable and notification of the applicant of this decision.[2]

A majority of other jurisdictions have held that the language of the conditional receipt clearly expresses the intention of the contracting parties. Thus, by applying a strict contractual construction, these courts have held that insurability is a condition precedent to the affording of insurance coverage under a "satisfaction-type" conditional receipt.[3] Thus, a contract of insurance is said to arise only upon the insurance company's good faith determination that the applicant was insurable as a standard risk at the time of application. If the insurance company determines the applicant insurable as a standard risk, then the insurance relates back to the date of application. If the applicant is deemed uninsurable as a standard risk, then no contract of insurance will be deemed to have ever arisen.

---

[2] *Ransom v. Penn. Mut. Life Ins. Co.* (1954), 43 Cal. 2d 420, 274 Pac. 2d 633; *Slobojan v. Western Travelers Life Ins. Co.* (1969), 74 Cal. Rptr. 895, 450 Pac. 2d 271; *Metropolitan Life Ins. Co. v. Wood* (9th Cir. 1962), 302 Fed. 2d 802; *Prudential Ins. Co. of America v. Lamme* (1967), 83 Nev. 146, 425 Pac. 2d 346; *Law v. Hawaiian Life Ins. Co.* (1969), 51 Hawaii 299, 459 Pac. 2d 195; *Denney v. Washington National Ins. Co.* (1968), 14 Mich. App. 469, 165 N. W. 2d 600; *Allen v. Metropolitan Life Ins. Co.* (1965), 44 N. J. 294, 208 Atl. 2d 638; *Toevs v. Western Farm Bureau Life Ins. Co.* (1971), 94 Idaho 151, 483 Pac. 2d 682; *Anderson v. Metropolitan Life Ins. Co.* (1972), 69 Misc. 2d 205, 329 N. Y. Supp. 2d 197.

[3] *See: Scheinman v. Phoenix Mut. Life Ins. Co.* (7th Cir. 1969), 409 Fed. 2d 999; *Cortez v. Life Ins. Co. of North America* (8th Cir. 1969), 408 Fed. 2d 500; *Cliborn v. Lincoln National Life Ins. Co.* (10th Cir. 1964), 332 Fed. 2d 645; *McLean v. Life of Virginia* (1971), 11 N. C. App. 87, 180 S. E. 2d 431; *Novellino v. Life Ins. Co. of North America* (Del. 1966), 216 Atl. 2d 420; *Suarez v. Southland Life Ins. Co.* (Fla. App. 1963), 158 So. 2d 536; *Simpson v. Prudential Ins. Co.* (1962), 227 Md. 393, 177 Atl. 2d 417.

We think the theory of strict contractual construction of insurance contracts followed by a majority of jurisdictions is consistent with the philosophy of this court.

"Contracts of insurance rest upon and are controlled by the same principles of law that are applicable to other contracts, and parties to an insurance contract may provide such provisions as they deem proper as long as the contract does not contravene law or public policy." *McPhee v. American Motorists Ins. Co.* (1973), 57 Wis. 2d 669, 673, 205 N. W. 2d 152.

Since the contract in question—the conditional receipt—provides that insurability shall be a condition precedent and thus must be satisfied prior to the effectiveness of coverage, and since such a condition precedent is not contrary to law or public policy, the burden is upon the decedent's administratrix to prove that the decedent was insurable as a standard risk in order to recover under the insurance contract. Since the appellant failed to carry her burden of proof that the decedent was insurable as a standard risk, the trial court correctly ruled that recovery could not be permitted under the contract.

The appellant argues that even though the contract—conditional receipt—provides that insurability is a condition precedent to coverage, that the conditional receipt is ambiguous on its face in that a reasonable person would believe that under the contract he had purchased interim insurance. Since, under such circumstances, the insurance contract must be construed as effecting that which a reasonable person in the position of the insured would understand the words to mean,[4] then the appellant argues that this court is compelled to find that contract of interim insurance was in effect, subject only to the respondent's right to terminate coverage upon a determination of uninsurability. We do not agree.

---

[4] *Luckett v. Cowser* (1968), 39 Wis. 2d 224, 159 N. W. 2d 94; *McPhee v. American Motorists Ins. Co., supra.*

We are of the opinion that a reasonable person in the position of the applicant would understand the language used in the conditional receipt as requiring the applicant to be determined insurable as a standard risk prior to the effecting of coverage. The language availed of by the insurance company is plain on its face. Clearly, under the contract the respondent insurance company did not contemplate interim insurance prior to a determination of insurability nor is said contract so ambiguous that a reasonable person would contemplate that he had been afforded interim insurance.

". . . [I]t is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not paid . . . ." *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185.

The appellant would have us apply that which one court has called the doctrine of "constructive ambiguity" of *Ransom v. Penn. Mut. Life Ins. Co.*[5] and subsequent cases. Under such a doctrine, the court would avail itself of a fictional ambiguity so as to provide a basis upon which the court could legislate coverage under a conditional receipt. We refuse to do so.

"Admittedly there have been cases in which a theory of constructive ambiguity has been employed in the absence of any ambiguity. [Citations omitted.] Nevertheless, we are unable to decide the case at bar on a basis of a fiction which we deem inapplicable. The literal meaning of the receipt in this case is that the insurer engaged to insure the insured, if he turned out to be insurable, and, in that event, the insurance would be in effect from the date of the application. Such contracts have not yet been declared to be illegal in this state. Accordingly, this is the contract the parties made, and we are not at liberty to create a new contract for the parties." *Morgan*

[5] *Supra*, fn. 2.

*v. State Farm Life Ins. Co.* (1965), 240 Ore. 113, 117, 400 Pac. 2d 223, 224.

It is not within the province of this court to determine what coverage, in its good conscience, the life insurance industry should be required to offer under a conditional receipt. Nor is this court empowered under secs. 601.41 (1) and 206.17, Stats., to regulate and approve policies of life insurance. That function is vested by the legislature in the office of the commissioner of insurance. We do not have the power to create a new contract for the parties. Thus, while we may not approve of such a sales device as a conditional receipt and would like to see interim insurance afforded, we are powerless to so legislate. Therefore, we hold, consistent with our prior discussion, that under the "satisfaction-type" conditional receipt as was availed of by the respondent insurance company in the case at bar, insurability is a condition precedent to insurance coverage and absent a finding by the court that the applicant was insurable as a standard risk, recovery will not be allowed under the insurance contract.

Appellant also raised an issue as to whether the defendant waived its right to deny coverage since the defendant's agent and doctor were aware of the physical condition which was the sole reason for the subsequent rejection.

We find no action on the part of the insurance company itself or any of its agents to intentionally relinquish its right to termination. *Knapke v. Grain Dealers Mut. Ins. Co.* (1972), 54 Wis. 2d 525, 196 N. W. 2d 737; *Ryder v. State Farm Mut. Automobile Ins. Co.* (1971), 51 Wis. 2d 318, 187 N. W. 2d 176.

The defendant insurance company's defense of accord and satisfaction was not raised at the trial level and is moot under our ruling in this case.

We are satisfied that the conditional receipt was not ambiguous. We find that the insurance company made

an investigation and in good faith determined that the decedent was uninsurable. We conclude that there was no interim insurance coverage and the judgment must be affirmed.

*By the Court.*—Judgment affirmed.