STUDENT ASSOCIATION OF UNIVERSITY OF WISCONSIN-MILWAUKEE, and others, Appellants v. BAUM, and others, Respondents.

*No. 75-406. Argued September 7, 1976.—Decided November 3, 1976.*
(Also reported in 246 N. W. 2d 622.)

284

For the appellants there were briefs by *Curry First* and *Perry & First, S. C.* of Milwaukee, and oral argument by *Curry First.*

For the respondents the cause was argued by *LeRoy L. Dalton,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. Basic to a resolution of the issues is the construction of sec. 36.09 (5), Stats.

In July of 1974 the legislature merged all of the state universities into one university system with one board of regents, with the chancellor of each of the several campuses responsible to the board of regents.

One of the sections of the statutes enacted to effectuate the merger is sec. 36.09 (5). It is as follows:

"(5) *Students.* The students of each institution or campus subject to the responsibilities and powers of the board, the president, the chancellor and the faculty shall be active participants in the immediate governance of and policy development for such institutions. As such, students shall have primary responsibility for the formulation and review of policies concerning student life, services and interests. Students in consultation with the chancellor and subject to the final confirmation of the board shall have the responsibility for the disposition of those student fees which constitute substantial support for campus student activities. The students of each institution or campus shall have the right to organize themselves in a manner they determine and to select their representatives to participate in institutional governance."

In April of 1974 the constitution of the plaintiff-student association was certified by the election commission. It provides that all students currently enrolled at the University of Wisconsin-Milwaukee are members of SA (student association); that all legislative power is vested in a student senate to be elected at large by

the members; and that the president and the vice-president are to be elected at large. The powers and duties of the senate, the president, and various other officers are also set forth and power of recall is retained by the members.

The student senate is the legislative body. It delegated to the president, Michael J. DeLonay, the power to appoint student members to university committees in September of 1974.

We are here concerned with the appointment of student members to three university committees—the Physical Environment Committee, the Merger Guidelines Committee, and the Segregated Fee Advisory Committee.

On August 29, 1974, DeLonay, as president of the student association, appointed the two students allotted to the Physical Environment Committee. About two weeks later Werner Baum, the Chancellor of the Milwaukee campus, wrote to the student association appointees and advised them their appointments were illegal, and appointed two of his own choice. His opinion was based upon a *UW Law and Regulations* provision of 1969 which provided this committee should have thirteen members, including two students appointed by the chancellor. DeLonay then advised the two students appointed by the chancellor that their appointments were illegal because in violation of ch. 36, Stats.

On October 4, 1974, the regents adopted interim guidelines to implement sec. 36.09 (5), Stats., and issued instructions to each campus to develop implementation plans:[1] Chancellor Baum delegated his authority in this matter to Assistant Chancellor Spaights. Chancellor Spaights set up a committee consisting of administra-

---

[1] In "B," paragraph 3 of the guidelines, the following appears: "The primary right of faculty and students to organize themselves and select representatives in the manner they choose shall be recognized in the plan. . . ."

tion, faculty and student members. Five students were to be appointed. Chancellor Spaights appointed all five, including Michael DeLonay and Elizabeth Wright, Vice-President of the student association. Both DeLonay and Wright declined to serve, claiming the chancellor had no authority to make the student appointments.

The Interim Guidelines Committee was not a standing or continuing committee. It was to formulate guidelines to be submitted to the regents within a specified limited period of time and was to be disbanded after this function had been performed.

The plaintiffs also dispute the manner in which the student members were selected for the Segregated Fee Advisory Committee. This committee reviews requests for program financial support and recommends allocations from the segregated student fees for various campus activities. The final allocation of the fees must have the approval of the chancellor. This committee was made up of ten student members, one faculty member and one administrative member.

On August 21, 1974, the chancellor wrote to DeLonay as president of the student association advising that he, the chancellor, would defer appointing the committee until the beginning of the second semester. However, in early November, 1974, the chancellor issued a directive setting up procedures and classifications for the nomination and election of the student committee members by the student body. The directive called for election of eleven students in nine classifications, including two from the student association.[2]

[2] (1) Student Association (2)—Students must be elected officials of the Student Association; (2) Resident Halls (1)—Student must be a resident of Sandburg Hall; (3) Athletics (1)—Student must be a member of the Captain's Council; (4) Publications (1)—Student must be a staff member of the UWM Post; (5) Union (1)—Student must be a member of the Union Policy

President DeLonay and Brad Bloch were elected as student association members but refused to serve because of their belief that the students and not the chancellor had the right to determine how the students were to be selected under sec. 36.09 (5), Stats.

The plaintiffs assert that the student association, through its president, has the exclusive right to select and appoint the students to the various university committees with student representation by virtue of sec. 36.09 (5), Stats.

In support of this assertion they argue that the student association is the only campus student organization that includes all students as members; that the University of Wisconsin-Milwaukee administration, primarily the chancellor, has recognized the student association as representing the students and has not extended that recognition to any other student group; and that no student or student groups have challenged this position, at least since the enactment of the statute.

The plaintiffs argue that the final sentence of sec. 36.09 (5), Stats., is plain and unambiguous upon its face and that no construction of the statute to determine legislative intent is necessary or permissible.

The sentence in question is as follows: "The students of each institution or campus shall have the right to organize themselves in a manner they determine and to select their representatives to participate in institutional governance."

█ If this sentence could be considered without regard to the rest of the section and balance of ch. 36, Stats., and if there is in fact no ambiguity in it, their position

Board or the Union Activities Board; (6) Day Care Center (1)— Student must have a child currently enrolled at the UWM Day Care Center; (7) Part-Time Undergraduate (1)—Student must be a part-time undergraduate student; (8) Full-Time Undergraduate (2)—Students must be full-time undergraduate students; (9) Graduate (1)—Student must be a graduate student.

would be correct.[3] However, we conclude the sentence cannot be construed without reference to the balance of the section and the entire chapter because the whole chapter deals with the governance of the university system. We further conclude the sentence is not unambiguous. Therefore the rule does not apply and the court must construe the statute.

The first sentence of sec. 36.09(5), Stats., is as follows: "The students of each institution or campus subject to the responsibilities and powers of the board, the president, the chancellor and the faculty shall be active participants in the immediate governance of and policy development for such institutions." The rights of the student are therefore subject to some qualifications.

■ The student rights are subject to the responsibilities of the board of regents. The primary responsibility for governance of the system, as outlined in sec. 36.09 (1)(a), Stats.,[4] is vested in the board. To do this the board is mandated to enact policies and rules for governing the system. The chancellor is vested with the responsibility of administering board policies.[5] In

[3] *United States v. Cihal* (W.D. Pa. 1972), 336 Fed. Supp. 261, 267; *Ginsberg & Sons v. Popkin* (1932), 285 U.S. 204, 52 Sup. Ct. 43, 76 L. Ed. 704; *Schlosser v. Allis-Chalmers Corp.* (1974), 65 Wis.2d 153, 161, 222 N.W.2d 156.

[4] "36.09 *Responsibilities.* (1) *The Board of Regents.* (a) The primary responsibility for governance of the system shall be vested in the board which shall enact policies and rules for governing the system, plan for the future needs of the state for university education, ensure the diversity of quality undergraduate programs while preserving the strength of the state's graduate training and research centers and promote the widest degree of institutional autonomy within the controlling limits of system-wide policies and priorities established by the board."

[5] "36.09(3) *The Chancellors.* The chancellors shall be the executive heads of their respective faculties and institutions and shall be vested with the responsibility of administering board policies under the coordinating direction of the president and be

September of 1974, the board established interim guidelines for implementation of sec. 36.09 (5). The guidelines provide that "[w]here student membership on a given policy development agency is authorized . . . , procedures for establishing such membership should also be defined." The guidelines went on to note that these procedures should be in the spirit of sec. 36.09 (5). Student membership would be required by sec. 36.09 (5) on any committee which deals with the immediate governance of and policy development for the university.

■ The establishment of the various university committees, the composition of the committees as to administration, faculty and students, and the scope of the activities and authority of the committees are matters clearly within the authority of the board of regents and administered by the chancellor.

We now turn to a consideration of the three committees in question and a construction of sec. 36.09 (5), Stats., in relation to them.

As set forth above, the students were allotted two members of the Physical Environment Committee. In July of 1974, sec. 36.09 (5), Stats., became effective and gave the students the right to select their representatives. DeLonay, as president of the student association, appointed the allotted two members in August of 1974. However, his authority to appoint them at that time is open to challenge. The senate of the student association did not authorize him to make committee appointments until September of 1974. The chancellor refused to recognize DeLonay's appointments and personally appointed two of his own choice in September, 1974. It was his opinion, until interim guidelines were established, that the *UW Law and Regulations of 1969*, as promulgated by the regents, controlled the appointment of student representatives.

accountable and report to the president and the board on the operation and administration of their institutions. . . ."

We conclude that when sec. 36.09(5), Stats., became effective in July, 1974, the chancellor lost his authority to make these appointments. The statute gave this authority to the students as of that time. It is well settled that if a rule or directive of an administrative body or officer is in conflict with a newly enacted statute, the statute must take precedence.[6] The students had the right to select their representatives on the Physical Environment Committee.

For the same reasons the student appointments to the Interim Guidelines Committee by the assistant chancellor were invalid. However, the question is now moot because the committee was only advisory on an ad hoc basis and is now disbanded.

A more difficult question arises in determining whether the method used for the selection of the student members of the Segregated Fee Advisory Committee was in compliance with the statute. Sec. 36.09(5) emphasizes the student right in this area. It provides: "Students in consultation with the chancellor and subject to the final confirmation of the board shall have the responsibility for the disposition of those student fees which constitute substantial support for campus activities."

The chancellor, for reasonable and laudable reasons, concluded that the eleven student members of this committee should be in fact representative of the organizations and interests of the variety of campus activities that were eligible for an allocation of the segregated funds.

There is no question but that the students had "the right to organize themselves in a manner they determine." The student association is a student organization. All students are members of the association, all have a right to vote for the president, vice-president and the members of the legislative body, the student

---

[6] *State ex rel. Irany v. Milwaukee County Civil Service Comm.* (1962), 18 Wis.2d 132, 118 N.W.2d 137.

senate. Upon their face the election procedures appearing in the student association constitution are fair and complete. There is no substantial challenge to the assertion that the student association is the only campus organization that represents all of the students. If we were confronted with competing organizations or all students were not eligible for membership in this organization, the board, the chancellor, and this court would be faced with a different problem. The facts as revealed by the record are that there are no competing campus-wide organizations and all students are members. The student association, under these facts, must be recognized as the organized representative of the students.

The question still remains whether the student association, through its elected representatives, can select student committee members by appointment or whether the chancellor could require a general student election with specific qualifications for candidates for nomination and election.

We again set forth the statutory sentence: "The students of each institution or campus shall have the right to organize themselves in a manner they determine and to select their representatives to participate in institutional governance." Is the students' right to select their representatives an integral part of their right to organize in a manner they determine or is it two separate rights —one to organize and the other to select representatives?

There are two accepted methods for interpretation of statutes. The first, determining legislative intent, looks to extrinsic factors for construction of the statute. The second, determining what the statute means, looks to intrinsic factors such as punctuation or common meaning of words for construction of the statute. 2A Sutherland, *Statutory Construction* (4th ed. 1973), secs. 45.05, 45.07 and 45.14. Whichever of these methods is used, the cardinal rule in interpreting statutes is that the

purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act. *Statutory Construction, supra,* at pp. 56–57, sec. 46.05.

While a general student election to select student representatives to the various university committees does not offend the statute, was it the intention of the legislature to require it?

 The legislative intent of this section was to give students the statutory right to organize themselves as they determined and through the organization select their representatives to participate in institutional governance. If the right to organize and to select representatives is seen as two distinct rights without an integral relationship to each other, the possible effect could be the negation of one of these rights. For example, if a chancellor retains the right to dictate students shall be selected by election with two from this organization and one or two from other organizations, or persons with special interests, as was done here, the right to organize becomes meaningless. While students retain their right to organize, the administration can thwart the authority of the organization and deal with other students more to its liking. It can deal with two students from the dorms, two from publications, and others. This may be much easier. While those motives are not present in this case, an interpretation which does not recognize the right to organize and select representatives as integrally related could result in such a situation in the future. In addition, if the chancellor retains the power to direct, students shall be elected from some organization or another, does he not also have the power to say a particular committee requires that students be in the upper ten percent of their academic class. And if this power is present, the students' right to select their representatives could be only an illusion. If the students' right to or-

ganize themselves and select their representatives is viewed as two different rights, the purpose of the statute may not be carried out. In order to give effect to the legislative intent of this section, the right to organize and select representatives must be seen as one right, which must be free of administrative interference if it is, in reality, to be a right.

 In construing this section we should also look to the grammatical construction of the statute. Our reading of this sentence indicates that there are two entirely different meanings which could be found in these words which are both grammatically correct. The first is that the statute should be read as follows: The students of each institution or campus shall have the right to organize themselves in a manner they determine and [the right] to select their representatives to participate in institutional governance. This reading supplies the second use of the words "the right" and one could argue that these words are understood or implicit in the sentence as it now reads. The second is to omit insertion of the second use of the words "the right." Without inserting these words the students have one right rather than two. This right is the right to organize themselves in a manner they determine and to select their representatives to institutional governance. Both interpretations are grammatically correct but we believe the second interpretation is a better reflection of what the legislature intended. The statute does not say "the students shall have the rights." If it did, this would suggest two rights rather than one, or if the sentence contained the word "right" immediately before "to select their representatives," it would be clear that the students have two rights. This is not the case. The statute only says the students have the "right." One right. The right to organize and to select. Because these two interpretations are possible, we must ask which conforms more closely to the intent of the legislature. We believe it is

the second. This construction will give students the right without interference from the administration. Interpreting this final sentence in this way does not create a conflict with the preamble of this section. This first sentence merely says that students' rights to participate are subject to the responsibilities and powers of the board, president, chancellor and faculty. Where there is a specific and general provision in the same statute, the specific provision must control.

We conclude that the student association had the statutory authority to select the student members of the Segregated Fee Allocations Committee and that the chancellor exceeded his authority under the facts of this action.

*By the Court.*—Judgment reversed.

ABRAHAMSON, J. *(concurring).* The court today holds that the Chancellor could not directly appoint students of his choosing to the Physical Environment Committee and that the Chancellor could not unilaterally determine the structure and mode of selection of student representation on the Segregated Fee Advisory Committee. I concur in these results. Sec. 36.09 (5), Stats., grants to the students, not the administration, the right to select student representatives in institutional governance and thus precludes unilateral determination by the Chancellor of the manner in which the students' right of selection is to be exercised. However, I write this concurring opinion lest the majority opinion be misunderstood and be thought to endorse—which it does not —the Student Association's complete power to appoint students to committees.

The last sentence of sec. 36.09 (5), Stats., provides:

". . . The students of each institution or campus shall have the right to organize themselves in a manner they determine and to select their representatives to participate in institutional governance."

I cannot agree with the reasoning of the majority that this sentence creates a single right, which it characterizes as the students' "right to organize themselves as they determined and through the organization select their representatives to participate in institutional governance." The plain meaning of the sentence is that two rights are conferred and that both are conferred upon the students:

1. The *students* . . . shall have the right to organize themselves in a manner they determine; and

2. The *students* . . . shall have the right to . . . select their representatives to participate in institutional governance.

There is no ambiguity here. The briefs of the Student Association concede that there are two student rights and both are given to the students not to student organizations. The legislature could easily have provided for the result reached by the majority, but it did not do so. The rights of selection of representatives and of organization are no doubt interrelated. However, two rights are created in the students, and both must be protected.

The problems in formulating a policy on "student rights" are difficult, as demonstrated by the report of the Merger Implementation Study Committee which drafted secs. 36.09 (5), Stats.[1] That section was a com-

---

[1] "Section 36.09 (5) relating to students is new and recognizes the growing concern both for and by students in the educational processes. It provides that students, subject to the powers and responsibilities of the board, the president, the chancellors and the faculty, shall have a role as active participants in the governance and policy development of the institutions and shall have primary responsibility for the creation and review of policies relating to student life and activities. Students in consultation with the chancellor shall also have responsibility for the disposition of student fees where such fees constitute substantial support for campus student activities such as intra-mural sports, theater, student government and the like. Students shall also have the right to organize themselves as they determine.

promise, which, as the instant case demonstrates, left unresolved problems. The rights of organization conferred by the statute contemplated more than the creation of an all-campus student government. Some institutions in the university system have no such government, comparable to the plaintiff in this case. Students clearly can organize into a campus-wide student association if they so desire but the statute also guarantees their right to create other organizations, smaller in size, along the lines of particular areas of interest, academic or

"It is the intent of MISC [Merger Implementation Study Committee] to provide that in those areas where students have their primary interest, that they also have primary but not exclusive responsibility. Thus, the students' responsibility for participation in governance is limited by the fact that their role is subject to the responsibilities of the faculty, chancellors, president and regents. Likewise in the disposition of student fees for student activities where the student fee provides most of the support for the activity, the students are given a large share of the responsibility. However, they must operate in consultation with the chancellor in the budget process for the allocation of these funds, and the board must finally confirm such allocations.

"Many questions relating to the scope of this particular section and its implementation have been raised. There has been considerable discussion relating to the problem of holding students accountable for their actions in the same way that employees may be so held. Questions relating to student control of a state imposed and state collected segregated fee were also discussed in depth. During this entire discussion student representatives strongly expressed the position that they be given more rights in regard to not only the disposition of segregated fees that they pay but also in the development of the educational process.

"MISC considered all of the questions, positions and arguments brought before it in formulating the proposed section which clearly represents a compromise position in that it deals with many of the desired objectives of the students but also contains limitations. The section as proposed does not represent the unanimous view of the members of MISC and it was adopted by a very close vote. However, as adopted, the section represents the recommendation of MISC for legislative consideration." Report of the Merger Implementation Study Committee, January 31, 1973, p. 8.

otherwise, or based upon common residence, or for any other reason that might unite a group of students. So too the nature of committees participating in institutional governance, on which student representation would be appropriate or required, will vary widely. Some will affect the interests of the student body as a whole, while others will relate only to a limited segment thereof, such as one school or academic department.

In oral argument before this court, the Student Association took the position that if there is a student governmental entity on a campus, and if it is elected by all students and recognized as the student government, then it has the power to appoint students to committees. The Student Association delegated to its President the power "to appoint all students to all committees on campus" and "in the case of committees on the department or college level, where department or college student organizations exist," then the organizations may "submit recommendations to the President for appointment to said committees." On the other side, the University administration argued that it has the authority unilaterally to adopt the method by which students select their representatives to committees. I find neither position acceptable under the statute.

The administration's view would make a mockery out of the students' statutory rights of organization and selection of representatives.

Yet if the Student Association is allowed to usurp the power to determine all student representation on all committees on the campus, the right of students to organize would swallow up their right to select representatives. A reasonable accommodation of the rights of organization and of selection must be sought in each instance; what may be an appropriate method of selection for one committee may not be so for another. The nature of the committee's responsibilities and powers and the segment

of the student population whose interests are affected by the committee must be considered. The guiding principle should be that the students who are most affected by the decisions of a particular committee or other entity on which students are represented should have the responsibility for selecting those representatives and for determining the manner in which the selection is to be made.

When student representatives must be selected to a particular committee, the mode of selection and the segment of the student body which should participate in the selection will have to be determined, and the threshold question of who is to make these determinations will be presented. For the reasons already stated, I reject the solutions which would place these questions in the hands of either the Student Association or the Administration. Absent more specific legislative direction, the overall statutory scheme is best served by committing these initial decisions to a committee created for this purpose which is composed of students, faculty and administrative representatives, perhaps similar in process of selection and composition to the Merger Guidelines Committee discussed in the majority opinion.

As the majority opinion notes, the statutes reflect a broad scheme for different entities and persons to share power in the governance of the institution. The primary responsibility for overall governance of the system rests with the Board of Regents, and if problems cannot be resolved at the institutional level, review by the Regents should be sought.

I am authorized to state that Mr. Justice HEFFERNAN joins in this concurring opinion.