Barbara TERRY, Plaintiff-Co-Appellant,

v.

MONGIN INSURANCE AGENCY and Utica Mutual Insurance Company, Defendants-Appellants,

Phillip G. WADZINSKI, Pecard Chemical Company, Valerie A. Winquist, Beth A. Boyer, Employers Mutual Casualty Company, and Security Mutual Casualty Company, Defendants-Co-Appellants,

Joan A. JOHNS, Defendant,

ECONOMY FIRE & CASUALTY COMPANY, Defendant-Respondent-Petitioner,

ASSOCIATED HOSPITAL SERVICES, INC., Intervening Plaintiff.

Supreme Court

*No. 80–976. Argued December 1, 1981.—Decided January 18, 1982.*

(Also reported in 314 N.W.2d 349.)

For the defendant-petitioner there were briefs by *Fred F. Kaftan*, and *Kaftan, Kaftan, Kaftan, Van Egeren, Ostrow, Gilson & Geimer, S.C.*, of Green Bay, and oral argument by *Fred F. Kaftan*.

A joint brief was filed by *Philip A. Munroe* and *Di Renzo & Bomier* of Neenah, for defendants-co-appellants; and by *James J. Hinchey, Jr., Bruce B. Deadman* and *Everson, Whitney, Everson, Brehm & Pfankuch, S.C.*, of Green Bay, for defendants-appellants, and oral argument by *Mr. Munroe*.

SHIRLEY S. ABRAHAMSON, J.    This is a review of of a decision of the court of appeals[1] reversing a judgment of the circuit court for Brown county, Richard G. Greenwood, circuit judge. We affirm the decision of the court of appeals.

---

[1] *Terry v. Mongin Ins. Agency*, 102 Wis. 2d 239, 306 N.W.2d 270 (Ct. App. 1981).

The issue of law presented to the circuit court on motions for summary judgment, and then presented to the court of appeals and to this court, is whether sec. 631.36(2)(c), Stats. 1979–80, which requires an insurance company to give the policyholder ten days' notice of any mid-term cancellation, applies to a binder of automobile liability insurance. The circuit court held that sec. 631.36(2)(c) is not applicable to binders; the court of appeals reached the opposite conclusion.

The relevant facts are not in dispute. On December 17, 1976, Barbara Terry went to the office of Mongin Insurance Agency to purchase automobile insurance. A representative of Mongin completed an "Econo-Plan" policy application to Economy Fire & Casualty Company for Terry. The application included information about Terry, the expected use of the car, and the amount and types of coverage requested. Terry paid Mongin the first quarter's premium in advance. Mongin forwarded the application to Economy. It did not forward the premium payment to Economy, and there is no indication in the record whether retention of the premium by Mongin was standard practice. Economy responded by sending Mongin a printed "Application Acknowledgment Form" concerning Terry dated December 21, 1976, on which a checkmark had been placed next to the following words:

"2. Application bound 30 days from date on the application pending file clearance unless terminated sooner or replaced by a policy."

The next communication from Economy to Mongin is dated December 31, 1976. This communication advised Mongin that Terry's binder coverage would be cancelled as of January 5, 1977, and explained that because Terry had two recent speeding convictions, not one as shown on the application, Economy could "not issue the Econo-Plan policy." Economy requested Mongin to "advise the

applicant that all binder coverage we have been affording will end at 12:01 a.m. January 5, 1977." Although not relevant to a resolution of this case, there is a dispute between Terry and Mongin as to whether Mongin advised Terry on January 4 or January 7 that Economy had cancelled its binder and that she should apply for insurance with another company. On January 8, 1977, before any other insurance was obtained for Terry, Terry was involved in an automobile accident.

Terry initiated a suit against Mongin and its errors and omissions carrier, Utica Mutual Insurance Company, claiming that Mongin was responsible for failing to obtain coverage for Terry after Economy cancelled the binder. Utica impleaded Economy, and thereafter Terry, along with the claimants against Terry, asserted that Economy's cancellation of the binder was ineffectual and that Economy was liable for damages caused by Terry's negligence in the auto accident.

On motions for summary judgment filed by various parties, the circuit court granted summary judgment for Economy and dismissed Economy from the case concluding that Economy had effectively cancelled its binder prior to the accident. The court of appeals concluded that Economy did not comply with the ten-day notice requirement set forth in sec. 631.36(2)(c), Stats. 1979–80, that the binder was in effect on January 8, 1977, the date of the accident, and that the circuit court erred in granting summary judgment for Economy.[2]

The sole question of law presented by this review is one of statutory interpretation, i.e. whether sec. 631.36

[2] The court of appeals, citing *Maziasz v. Anderson*, 45 Wis. 2d 664, 667, 173 N.W.2d 585 (1970), concluded that the binder incorporates the policy which in turn incorporates the notice of cancellation requirements of sec. 631.36(2)(c). 102 Wis. 2d at 241.

(2) (c), Stats. 1979–80, governs the cancellation of a binder.

Sec. 631.36 (2) (c) governs mid-term cancellation of new policies, *i.e.* policies in effect less than sixty days at the time notice of cancellation is mailed or delivered, and provides that "no cancellation . . . is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder." Sec. 631.36 (2) (c) must be read in the context of paragraphs (a) and (b) of sec. 631.36 (2), to which sec. 631.36 (2) (c) refers.

Sec. 631.36 (2), Stats. 1979–80, provides as follows:

"(2) MIDTERM CANCELLATION. (a) *Permissible grounds.* Except as provided by par. (c), no insurance policy may be canceled by the insurer prior to the expiration of the agreed term or one year from the effective date of the policy or renewal, whichever is less, except for failure to pay a premium when due or on grounds stated in the policy, which must be comprehended within one of the following classes:

"1. Material misrepresentation;

"2. Substantial change in the risk assumed, except to the extent that the insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;

"3. Substantial breaches of contractual duties, conditions or warranties; or

"4. Attainment of the age specified as the terminal age for coverage, in which case the insurer may cancel by notice under par. (b) accompanied by a tender of a proportional return of premium.

"(b) *Notice.* No cancellation under par. (a) is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder.

"(c) *New policies.* Paragraphs (a) and (b) do not apply to any insurance policy that has not been previously renewed if the policy has been in effect less than 60 days at the time the notice of cancellation is mailed or delivered. No cancellation under this paragraph is effec-

tive until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder. . . ."[3]

Economy argues that sec. 631.36(2)(c) by its very terms regulates only cancellations of policies and that a binder is not a policy within the statutory definition of "policy."

We must therefore begin, as did the court of appeals, with a discussion of binders and policies. Both binders and policies are contracts of insurance. The statutes, however, define only the term policy; they do not define the terms binder and contract of insurance.

The binder is a well-known and often used instrument in the insurance industry. The Wisconsin legislature has specifically authorized the issuance of binders. Sec. 631.05, Stats. 1979–80, provides:

"**631.05 Oral contracts of insurance and binders.** No provision of chs. 600 to 646 may be interpreted to forbid an oral contract of insurance or issuance of a written binder. The insurer shall issue a policy as soon as reasonably possible after issuance of any binder or negotiation of an oral contract."

Although the Wisconsin insurance statutes do not define the word binder, the treatises and the cases are in agree-

---

[3] Sec. 631.36(2) deals with cancellation. Cancellation refers to termination of insurance coverage prior to the end of the agreed-upon period. *Peterson v. Truck Ins. Exchange*, 65 Wis. 2d 542, 552, 223 N.W.2d 579 (1974). Subsection (2)(a) sets forth the grounds upon which the insurer may cancel the policy. A policy can be cancelled, for example, if there has been a material misrepresentation. Subsection (2)(b) mandates that no such cancellation is effective "until at least 10 days after the first class mailing or delivery of a written notice to the policyholder." Even if the binder is viewed as a policy, subsections (2)(a) and (2)(b) do not apply to the case at bar, because subsection (2)(c) clearly states that paragraphs (a) and (b) do not apply to a "new" insurance policy which has been in effect less than 60 days at the time of the notice of cancellation. Therefore our focus here is only on (2)(c).

ment as to the nature and function of a binder. A binder is a contract of insurance in contemplation of a subsequent and more formal agreement; a binder is a contract for temporary insurance. A binder, although informal and sketchy in comparison to a policy, is issued prior to the issuance of a policy to afford insurance coverage during the interim between the application for and the issuance of a policy. A binder generally continues until a policy is issued, the risk is declined, or the time period agreed upon ends. A binder, even in the absence of express language, is construed as incorporating the terms and conditions of the standard policy used by the insurer or of a particular insurance policy specified by the parties.[4]

The legislature has defined a policy as "any document other than a group certificate used to prescribe in writing the terms of an insurance contract, including endorsements and riders and service contracts issued by motor clubs." Sec. 600.03(35)(a), Stats. 1979–80.[5]

---

[4] *See generally Turner v. Worth Ins. Co.,* 106 Ariz. 132, 472 P.2d 1, 3 (1970); *Lester v. Century Indemnity Co.,* 356 Pa. 15, 50 A.2d 678, 680 (1947); *Kiviniemi v. Am. Mut. Liability Ins. Co.,* 201 Wis. 619, 628, 231 N.W. 252 (1930); *Frank v. Travelers Indemnity Co.,* 310 So. 2d 418, 418 (Fla. App. 1975); *State Automobile Mutual Ins. Co. v. Babcock,* 54 Mich. App. 194, 220 N.W.2d 717, 721–722 (1974); 12A Appleman, *Insurance Law and Practice,* sec. 7227, pp. 145–154 (1981); 1 *Couch on Insurance* 2d, sec. 14.27, p. 607, sec. 14.30, pp. 611–612, sec. 14.37, pp. 617–618 (1959); Keeton, *Insurance Law,* sec. 2.3(a) pp. 36–37 (1971); *Vance on Insurance,* sec. 36, p. 219, sec. 40, pp. 234–246 (3d ed. 1951); O'Neill, *Interim Coverage: Conditional Receipts,* 1964 U. Ill. L. F. 571; Annot., *Temporary Automobile Insurance Pending Issuance of Policy,* 12 ALR3d 1304 (1967).

For a discussion of the conditional receipt in life insurance, *see Brown v. Equitable Life Ins. Co. of Iowa,* 60 Wis. 2d 620, 211 N.W.2d 431 (1973).

[5] This statutory definition is similar to the common usage of the term policy as referring to a formal, detailed document setting forth the terms of the insurance agreement. A typical treatise definition of a policy is as follows:

Economy argues that the binder in the instant case does not fit within the statutory definition of "policy" in sec. 600.03(35)(a), because the binder does not prescribe the terms of an insurance contract as required in the statutory definition of policy, and the legislature would not have specifically authorized written binders in sec. 631.05 if written binders were included in the statutory definition of policy.[6] We do not find Economy's reasoning persuasive. The binder may be viewed as "present[ing] in writing the terms of an insurance contract," since, as noted previously, the binder is generally interpreted as incorporating the terms of the policy to which the binder refers, here an Econo-Plan policy. Viewed in this way, a binder falls within the statutory definition of policy. Furthermore, it is not clear that the adoption of sec. 631.05 was intended by the legislature to distinguish binders from policies. Sec. 631.05, which specifically authorizes binders, was adopted to overrule what the legislature viewed as a mistaken decision of this court which concluded that certain insurance laws regulating policies prohibited binders.[7] Thus sec. 631.05

---

"A policy of insurance is the written or printed form to which the agreement or contract between the parties has been reduced, and which evidences such agreement or contract." 1 *Couch on Insurance* 2d, sec. 3:1, p. 119 (1959).

[6] Economy also argues that sec. 631.36(2)(c) requires notice to be mailed or delivered to a *policyholder*, and there was no policyholder here, since there was no policy. The word policyholder used in subsection (2)(c) is defined in sec. 600.03(37) to mean "the person who controls the policy by ownership, payment of premiums or otherwise." However the definition does not end here—the legislature in sec. 600.03(37) goes on to say "[s]ee also 'insured.'" Sec. 600.03(26) defines insured as "any person to whom or for whose benefit an insurer makes a promise in an insurance policy. The term includes policyholders, subscribers, members and beneficiaries." The definitions of policyholder and insured thus turn on the definition of policy.

[7] Parol contracts for life insurance and for automobile indemnity insurance were enforceable. *Kiviniemi v. American Mut. Liability Ins. Co.*, 201 Wis. 619, 628, 231 N.W. 252 (1930);

can be viewed as merely clarifying the point that binders are permissible temporary policies.

Although we are not persuaded by Economy's reasoning that a binder is not encompassed by the term policy as used in the statute, we need not—and do not—decide in the instant case whether the term "policy" as defined in sec. 600.03(35)(a) and as used throughout the Wisconsin insurance statutes always excludes or always includes a binder. We need only determine in the case at bar whether sec. 631.36(2)(c) is to be construed as governing cancellation of a binder.

We have repeatedly stated that "[t]he aim of all statutory construction is to discern the intent of the legislature," *Green Bay Packaging, Inc. v. ILHR Dept.*, 72 Wis. 2d 26, 35, 240 N.W.2d 422 (1976), and that a "cardinal rule in interpreting statutes" is to favor a con-

---

*Campbell v. Wilson,* 18 Wis. 2d 22, 32, 117 N.W.2d 620 (1962). The court nonetheless has held in *Schilbrech v. Inter-Ocean Cas. Co.,* 180 Wis. 120, 192 N.W. 456 (1923), that oral contracts or binders for accident or health insurance were impliedly forbidden by the insurance laws which required certain contractual formalities for such insurance. The Insurance Laws Revision Committee, created by ch. 406, Laws of 1965, to study and make recommendations for the revision and codification of the state insurance laws, proposed sec. 631.05, and commented as follows:

"NOTE: This section is intended to eliminate any such notion as that resulting in the decision in *Schilbrek* [*sic*] *v. Inter-Ocean Gas.* [sic] *Co.* (1923), 180 Wis. 120, 192 N.W. 456, that oral contracts or binders are impliedly forbidden because of particular sections of the code, especially those requiring certain contractual provisions. Of course this section does not require their use either. However, the oral insurance contract is a useful—indeed, necessary —device in some kinds of insurance; so also is the written binder. Any doubt about validity should be eliminated, in any case in which the general law of insurance contracts would otherwise find them valid. The statute of frauds has application to insurance only for unusual situations, apart from contracts that are promises 'to answer for the debt, default or miscarriage of another person'." Laws of 1975, ch. 375, sec. 41, note to sec. 631.05.

struction which will fulfill the purpose of the statute over a construction which defeats the manifest object of the act. *Student Asso., U. of Wis.-Milw. v. Baum,* 74 Wis. 2d 283, 294-95, 246 N.W.2d 622 (1976). Where one of several interpretations of a statute is possible, the court must ascertain the legislative intention from the language of the statute in relation to its context, subject matter, scope, history, and object intended to be accomplished. *State ex rel. First Nat. Bank & Trust Co. of Racine v. Skow,* 91 Wis. 2d 773, 779, 284 N.W.2d 74 (1979).

We recognize that sec. 631.36(2)(c) refers only to a "policy," but to determine what the term policy means, we must look at the use of the term in context. Sec. 631.36(2)(c) is part of sec. 631.36, and the scope of application of sec. 631.36 is set forth in sec. 631.36(1). Sec. 631.36(1) refers to both contracts of insurance and policies and provides as follows:

"631.36 **Termination of insurance contracts by insurers.** (1) SCOPE OF APPLICATION. (a) *General.* Except as otherwise provided in this section or in other statutes or by rule under par. (c), this section applies to all contracts of insurance based on forms which are subject to filing and approval under s. 631.20(1).

"(b) *Contracts more favorable to policyholder.* The contract may provide terms more favorable to policyholders than are required by this section.

"(c) *Exemption by rule.* The commissioner may by rule totally or partially exempt from this section classes or parts of classes of insurance contracts if the policyholders do not need protection against arbitrary or unannounced termination.

"(d) *Other rights.* The rights provided by this section are in addition to and do not prejudice any other rights the policyholder may have at common law or under other statutes.

"(e) *Construction.* Nothing in this section prevents the rescission or reformation of any life or disability in-

surance contract not otherwise denied by the terms of the contract or by any other statute."

The legislature did not state in sec. 631.36(1)(a) that sec. 631.36 applies only to insurance policies. Rather the legislature said that sec. 631.36 "applies to all contracts of insurance based on forms which are subject to filing and approval under s. 631.20(1)." The word "form" is defined in sec. 600.03(21), Stats. 1979–80, as follows:

" 'Form' means a policy or application prepared for general use and does not include one specially prepared for use in an individual case. See also 'policy'."

The parties agree that the written binder for automobile insurance is not a form subject to filing and approval but that the application and the Econo-Plan policy (which was contemplated by the application and the binder) are such forms. If a binder is viewed as a contract of insurance based on an application or on a policy or on both an application and a policy, then a binder falls within the scope of sec. 631.36 as "a contract of insurance based on forms which are subject to filing and approval." When we read 631.36(2)(c) with the scope provision of 631.36(1)(a), we must interpret the word policy in 631.36(2)(c) to mean "all contracts of insurance based on forms which are subject to filing and approval under sec. 631.20(1)." If we read the word "policy" in this way then the binder in the case at bar is a policy for the purposes of sec. 631.32(2)(c).

If we look at sec. 631.36(2)(c) in the broader context of chapter 631, Stats. 1979–80, which is entitled "Insurance Contracts Generally," we note that the words "insurance policy" and "contracts of insurance" are used in a number of places. Sec. 631.01(1) announces that chapter 631 applies "to all insurance policies delivered or issued for delivery in this state." However, in reading sec. 631.01 further, we find that the section refers to

both insurance policies and to insurance contracts. Thus sec. 631.01(5) provides that the commissioner of insurance "may by rule exempt any class of insurance contract" from the provisions of ch. 631. Throughout ch. 631, there is reference both to insurance policies and to insurance contracts, sometimes in the same section. *See, e.g.,* secs. 631.08, 631.27, Stats. 1979–80. Thus it is apparent that chapter 631 generally, and sec. 631.36 specifically, apply to both insurance policies and insurance contracts. It is not necessary to determine whether these phrases are always used interchangeably or whether in some instances the two phrases refer to different kinds of agreements or different kinds of documents. All that we decide today is that the word policy in sec. 631.36 (2)(c) includes a binder such as issued by Economy in the instant case.

Interpreting sec. 631.36(2)(c) to include the written binder in the case at bar comports with the history of and the objective of the section. The Insurance Laws Revision Committee which drafted sec. 631.36 based it on the rules of cancellation and nonrenewal which were initially adopted by the legislature in 1967[8] and were applicable only to automobile insurance. In 1967 there was increasing public concern and insurance industry concern over insurers arbitrarily cancelling existing automobile insurance policies and refusing to renew expired policies. In response to this concern, the legislature limited the automobile insurance carriers' right of cancellation and required advance notice of cancellation and non-renewal. *See* Ghiardi & Wienke, *Recent Developments in the Cancellation, Renewal and Rescission of Automobile Insurance Policies,* 51 Marq. L. Rev. 219 (1967). The purpose of the 1967 statute was to assure the individual who purchased automobile insurance that he or she could rely on having insurance coverage during the period agreed

---

[8] Ch. 337, Laws of 1967, creating sec. 204.341, Stats. 1969.

upon. The Insurance Laws Revision Committee concluded that the principles of the 1967 law "deserve quite general application . . . [and that] [t]here is little disagreement about the objectives of this section, which is to ensure for *all* policyholders the fair treatment in contract relationships that wise insurers give as a matter of course." Ch. 144, Laws of 1969, sec. 24, Preliminary Comment to ch. 631, pp. 266–267. (Emphasis in the original.) The Insurance Laws Revision Committee summarized the objective of sec. 631.36 as follows:

". . . For the average individual who purchases property or liability insurance, much of the value of his insurance lies in the fact that he may rely on the security of his property to insulate his savings from disasters beyond his control and give him some peace of mind. If an insurer may cancel a policy at mid-term without justification, or may decline to renew without sufficient notice, these values are undermined." *Id.* at 266.

The purpose of sec. 631.36(2)(c) is to provide the insured, in the event of cancellation of insurance coverage prior to the expiration of the agreed upon term, with a reasonable period within which coverage continues. The insured is thus given the opportunity to find another insurer or to take such steps as are required to avoid the possibility of an uninsured loss. The statutory cancellation notice requirements protect both the insured and, in the case of automobile insurance, victims of the insured's negligence. The insured's need that insurance coverage continue for a reasonable period after cancellation within which the insured has an opportunity to obtain other insurance is not diminished by the fact that the insurance coverage is provided by a binder rather than a policy. Interpreting sec. 631.36(2)(c) to apply to binders furthers this purpose of the statute.[9]

---

[9] Courts of other jurisdictions have interpreted their jurisdictions' statutory notice of cancellation provisions as governing binders. *See, e.g., Turner v. Worth Ins. Co.*, 106 Ariz. 132, 472

If we were to accept Economy's view that the statute requires no notice to cancel binders, persons insured under binders could never be certain of their coverage and would be subject to the risk that the coverage upon which they are relying might be cancelled without giving them an opportunity to obtain other coverage. One purpose of binders is to provide insurance as quickly as possible for a limited time period. The purpose of sec. 631.36(2)(c) is to assure the continuity of insurance. Economy's position that sec. 631.36(2)(c) does not govern binders contravenes the very certainty and security that a binder and sec. 631.36(2)(c) are designed to afford. Economy nevertheless argues that requiring ten-days' advance notice to cancel binders contravenes the legislative purpose of fostering the use of binders. Economy maintains that the application of sec. 631.36(2) to binders will significantly reduce the use of binders in the state of Wisconsin and is therefore contrary to the interests of consumers who often need to obtain immediate temporary insurance coverage. We find this argument unpersuasive. Apparently it is the practice of Economy—and probably other insurers—to provide notice of cancellation of binders. In the case at bar Economy provided five days' written notice of cancellation; the date of the letter advising cancellation is December 31, 1976; the effective date of cancellation was January 5, 1977. We doubt that an additional five days' written notice is so onerous a burden as to stop Economy from issuing binders in the future. In any event, if Economy believes that it is contrary to public policy for the legis-

P.2d 1 (1970); *State Automobile Mutual Ins. Co. v. Babcock*, 54 Mich. App. 194, 220 N.W.2d 717 (1974); *Georgia Farm Bureau Mutual Ins. Co. v. Gorden*, 126 Ga. App. 215, 190 S.E.2d 447 (1972). Although Economy attempts to distinguish these cases on the basis of statutory or factual differences, we do not think the differences are material, and we find the reasoning of these cases persuasive.

lature to require ten days' notice of cancellation of binders, this argument should be made to the legislature, not to the courts.

We conclude that the legislature intended sec. 631.36 (2)(c) to govern cancellation of binders. Economy's cancellation notice dated December 31, 1976, was not, under sec. 631.36(2)(c), effective to cancel the insurance coverage under the binder as of January 8, 1977, the date of the accident. Accordingly, we affirm the court of appeals which reversed the circuit court's dismissal of the action against Economy.

*By the Court.*—Decision of the court of appeals affirmed.

COFFEY, J. *(dissenting)*. I agree with the legal analysis contained in Mr. Justice STEINMETZ' dissent to the majority opinion and dissent separately to point out that the majority opinion completely fails to consider whether Barbara Terry is a "policyholder" as defined in sec. 600.03(37), Stats. Based upon the facts of this case, I would conclude that she was not a policyholder and, therefore, was not entitled to ten days' written notice regardless of whether the binder issued to her is considered to be an insurance policy governed by sec. 631.36(2)(c). I also dissent separately to indicate the adverse ramifications of the majority opinion on Wisconsin insurance law.

I believe that the majority has erred in its decision by failing to consider whether Barbara Terry was a "policyholder" as defined by sec. 600.03(37), Stats. It cannot be disputed that the ten-day notice requirement of sec. 631.36(2)(c) only applies to the "policyholder." The term "policyholder" is defined by the insurance statutes in the manner set out below:

"600.03 **Definitions, usages and synonyms.** In chs. 600 to 646, unless the context indicates otherwise:

"...

"(37) 'Policyholder' means the person who controls the policy by ownership, payment of premiums or otherwise. See also 'insured.'"

In the case at bar, all communications concerning Terry's application of insurance were between the Mongin Insurance Agency representing Terry and Economy Fire and Casualty Company. In addition, Economy never received any premium for the insurance of the binder. The first quarter's premium was paid to Mongin by Terry and retained by Mongin for the entire time period that the binder was in effect. Under these facts, Barbara Terry cannot be considered a "policyholder" under the statutory definition of that term. She neither paid any money to Economy for the binder nor did she control the binder as evidenced by the fact that all communications concerning it were between Mongin and Economy. In fact, it was Economy that controlled the binder during the period of time relevant to this dispute.

Thus, even in light of the majority's construction of the term "policy" as including the binder issued in this case, it is clear that Barbara Terry was not entitled to ten days' notice of cancellation as she was *not* a policyholder as defined in the insurance statutes. For this reason, the result reached by the majority opinion is erroneous regardless of the construction of the term "policy."

Independent of my belief that Barbara Terry was not a policyholder and, therefore, not entitled to the statutory notice of cancellation is my conviction that the majority opinion will have adverse ramifications on Wisconsin insurance law. Among these adverse effects is that the majority's construction of sec. 631.36 (2) (c), Stats., will bind an insurer to provide coverage for at

least a ten-day period after the insurer discovers that the prospective insured deceived it concerning information that was a material part of the insurance contract. Specifically in the case at bar, the insurer is being required to provide insurance for a driver whose application it refused and who was only granted coverage under a binder because the application for insurance contained a false statement as to the potential insured's driving record.

An insurance binder was designed to allow the insurer to provide temporary coverage to a potential insured while the insurer verified the information contained in the application for insurance. The binder furthered the public policy of having drivers continually insured during the period required to process insurance applications. The majority's construction of sec. 631.36 (2) (c), Stats., however, changes the insurance binder to a policy of insurance extending at least ten days past the insurer's rejection of the potential insured. Because the majority's construction of sec. 631.36 (2) (c) requires extended insurance coverage beyond the time that the insurer rejects an insurance applicant, the construction may have the adverse effect of causing insurers to decrease the use of binders and, thus, frustrate the policy goal of having drivers insured pending the acceptance of their application.

It is a reality of life that many persons allow their insurance coverage to lapse before applying for a new insurance policy. These same people continue driving, although uninsured. If insurers are reluctant to issue binders, these persons will expose other users of the roadways to an increased danger of being harmed by an uninsured and financially irresponsible driver.

Where binders are still used by insurers, I believe the majority's opinion will have the adverse effect of causing the insurers to raise the cost of an insurance policy,

either through a charge for the binder or a raise in insurance rates. This increased cost will be passed on to all insureds, although only drivers whose insurance applications are rejected receive the benefit of the extended binder coverage.

Considering each of the adverse effects of the majority decision, I believe that it is eminently clear that the legislature did not intend to require an insurer to give ten days' statutory notice to cancel a binder. Because of the short term and temporary nature of the insurance afforded by a binder, common law reasonable notice is both fair and adequate as it was in the case at bar. The longer statutory notice was intended to apply only to insurance "policies" which establish a greater contractual commitment between the parties than do "binders."

The fallacy of the majority's construction of sec. 631.-36(2)(c), Stats., is apparent from the fact that they declined to hold that the term "policy" as used throughout the Wisconsin Insurance Statutes always includes binders. In the several different statute sections referred to in Justice Steinmetz' dissent, it is apparent that it would be incorrect and illogical to construe the term policy to include binders. The fact that the majority's construction of "policy" as including "binders" cannot be applied consistently throughout the insurance statutes clearly demonstrates that this construction is contrary to that intended by the legislature. This is especially true where the legislature has indicated its intent that the term "policy" be applied consistently throughout the insurance statutes. (*see:* sec. 600.03(35)(a), Stats.)

For the above stated reasons and those stated in the dissent of Justice Steinmetz, I would reverse the decision of the court of appeals.

I am authorized to state that Mr. Justice WILLIAM G. CALLOW joins in this dissent.

STEINMETZ, J. (*dissenting*). I respectfully dissent from the majority decision.

While it is true there is some existing law in other jurisdictions that a binder, when issued, by reference includes all conditions and terms of the requested policy to which it relates, including notice provisions,[1] the Wisconsin legislature has not provided for such a result in this state.

The Wisconsin statutes distinguish between a policy and a binder. Sec. 631.05, Stats.,[2] distinguishes between the policy and a forerunner binder: "The insurer shall issue a policy as soon as reasonably possible after issuance of any binder or negotiation of an oral contract."

The majority holds that sec. 631.36(2)(c), Stats.,[3] which applies to "New policies," requires a ten-day cancellation notice for a binder, as well as for a policy of insurance, even though the legislature in sec. 631.05 treated the issuance of a binder and the issuance of a policy as separate transactions.

I would hold that under the circumstances of this case a binder may be terminated by giving the person applying for insurance reasonable notice of cancella-

---

[1] *See*, 17 Couch, *Insurance* 2d, sec. 67.2 at 395–96 (1967).

*Contra*, 12A Appleman, *Insurance Law and Practice*, ch. 263A, *Binders*, sec. 7227 (1981).

[2] "**631.05 Oral contracts of insurance and binders.** No provision of chs. 600 to 646 may be interpreted to forbid an oral contract of insurance or issuance of a written binder. The insurer shall issue a policy as soon as reasonably possible after issuance of any binder or negotiation of an oral contract."

[3] Sec. 631.36(2)(c), Stats. provides:

"**New policies.** Paragraphs (a) and (b) do not apply to any insurance policy that has not been previously renewed if the policy has been in effect less than 60 days at the time the notice of cancellation is mailed or delivered. No cancellation under this paragraph is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder. Subsections (6) and (7) do not apply to such a policy."

tion. Under the facts as presented and reviewed by the majority, the plaintiff had actual notice through the agent of cancellation. The following is the chronology of events regarding the binder:

(1) On December 21, 1976, Economy sent agent Mongin a printed application acknowledgement form, the significant language being: "Application bound 30 days from date on the application pending file clearance. [U]nless terminated sooner or replaced by a policy."

(2) On December 31, 1976, Economy sent a cancellation to Mongin for Barbara Terry. As to the notice it stated: "Please advise the applicant that all binder coverage we have been affording will end at 12:01 a.m. Jan. 5, 1977."

(3) Carl Mongin, of the corporate Mongin agency, testified in his deposition that he informed Barbara Terry on January 4, 1977, that Economy refused to accept her.

(4) On January 7, 1977, Carl Mongin told Barbara about applying for insurance with another company, Viking, and told her she would have to sign an application for a policy with Viking.

(5) Barbara Terry acknowledged that on January 7, 1977, Carl Mongin told her:

(a) Economy refused to cover her.

(b) *She did not have coverage.*

(6) The accident occurred on January 8, 1977.

There is a real dispute in this case between Barbara Terry and the Mongin agency as to whether she was led to believe she had coverage in another company, but that has no influence in determining the notice period of cancellation for the binder. Neither is it necessary nor permissible herein to discuss whether Mongin is Terry's or Economy's agent, since that is an issue also in the cause of action against Mongin.

Barbara Terry acknowledged she received notice on January 7, 1977, that the Economy binder was cancelled. The accident occurred on January 8, 1977. Whether she had coverage or was led to believe by Mongin she was insured by Viking from January 7 is of no consequence in this lawsuit.

I would hold under the circumstances of this case that Barbara received actual notice of cancellation of the Economy binder before she had the accident. Economy was not required to give ten days' notice of cancellation of the binder, since a binder is not a contract of insurance based on forms which are subject to filing and approval under secs. 631.36(1)(a) and 631.20(1), Stats.[4]

The majority advises Economy to go to the legislature if Economy believes it is contrary to public policy to require ten days' notice of cancellation of binders and to make that argument there and not to the courts.[5] I do not believe the legislature has established the public policy adopted by the majority applying the notice requirement to binders. The legislature has distinguished

---

[4] Sec. 631.36, Stats., provides:

"631.36 **Termination of insurance contracts by insurers.** (1) SCOPE OF APPLICATION. (a) *General.* Except as otherwise provided in this section or in other statutes or by rule under par. (c), this section applies to all contracts of insurance based on forms which are subject to filing and approval under s. 631.20(1)."

Sec. 631.20(1), Stats., provides:

"631.20 **Filing and approval of forms.** (1) FILING. No form subject to s. 631.01(1), except as exempted under s. 631.01(2) and (5), may be used unless it has been filed with and approved by the commissioner. It is deemed approved if it is not disapproved within 30 days after filing, or within a 30-day extension of that period ordered by the commissioner prior to the expiration of the first 30 days."

[5] "In any event, if Economy believes that it is contrary to public policy for the legislature to require ten days' notice of cancellation of binders, this argument should be made to the legislature, not to the courts." (*Supra* at 588, 589.)

between binders and policies for notice purposes. The majority opinion encourages insurance companies to give up the use of binders which will be to the detriment of the vast majority of prospective purchasers of insurance policies. As long as a company must give the same ten day notice for cancelling a binder as it is required to do for a policy, there is little reason for a binder to be issued. This means the applicant will have to wait for coverage until a policy is issued. The applicant will have to refrain from driving until the policy is issued or take the risk of driving and causing injury to a third party while not having financial responsibility. Either way, this majority opinion may give extra coverage in this immediate case; however, it has interfered with the established, ordinary use of a binder.

I would reverse the court of appeals, remand to the trial court and affirm the trial court's judgment in granting Economy's motion for summary judgment dismissing the pleadings as to Economy Fire and Casualty Company.

I am authorized to state that Mr. Justice William G. Callow joins in this dissent.