Argued May 7, reversed July 15, 1971

KNAPPENBERGER ET AL, *Respondents, v.*
CASCADE INSURANCE COMPANY, *Appellant.*

487 P2d 80

*J. D. Bailey,* Hillsboro, argued the cause for appellant. With him on the briefs were Carrell F. Bradley and Schwenn, Bradley & Batchelor, Hillsboro.

*L. M. Schouboe,* Portland, argued the cause for respondents. With him on the brief were Schouboe and Cavanaugh, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE* and HOWELL, Justices.

---

* Tongue, J., did not participate in this decision.

O'CONNELL, C. J.

This is a declaratory judgment suit brought to determine the liability of defendant insurance company under an automobile liability policy issued to plaintiff John D. Knappenberger on April 21, 1968. Defendant appeals from an adverse decree.

The question presented is the effect of an endorsement purporting to change a pre-existing policy of insurance so as to exclude coverage while the automobile was being driven by James Knappenberger, the 18-year old son of the insured.

Before the endorsement in question was executed defendant could not, under the terms of the policy terminate coverage except by refusing to renew the policy upon its anniversary date. In order to make an effective refusal to renew the policy it was necessary for the insurer to give the insured written notice of the decision not to renew 20 days prior to the anniversary date.

During the first ten months the policy was in effect the insured's son James was involved in two automobile accidents. Because of this defendant decided that it would discontinue coverage for James as soon as possible. An underwriter for defendant informed Craig Hannum (the insurance broker through whom John Knappenberger had bought the policy) that Mr. Knappenberger would have to choose between losing his policy for the coming year or eliminating James from coverage under the policy.

It was impossible to deal directly with the insured because he had suffered a massive stroke in January of 1969. It was necessary, therefore, for Hannum to carry on the negotiations with Mrs. Knappenberger for the change in the policy. Mrs. Knappen-

berger was not familiar with business matters. Hannum testified that he informed Mrs. Knappenberger that defendant wished to terminate coverage of James prior to the anniversary date of the policy. Mrs. Knappenberger denied that she was so informed, and testified that she believed that the purpose of the negotiations was to remove James from coverage as of the anniversary date of the policy on April 21, 1969, and not before that date.

On April 3, 1969 Hannum wrote a letter to the Knappenbergers which was as follows:

"Mr. & Mrs. John D. Knappenberger
3055 S.W. 66th Court
Portland, Oregon 97225
Re: Cascade Insurance Company
    Policy No. 195851

Dear Mr. & Mrs. Knappenberger:
Enclosed is an endorsement deleting your son, James, from the policy. We attempted to keep him on this contract but in accordance with your and my discussion, the company is remaining adamant about him being excluded.

I have discussed your risk with several other insurance companies in hopes of shifting the entire account. They, however, feel the same as Cascade and I therefore conclude that Cascade's action is warranted.

Because of this deletion, there will be a reduction in premium under your contract. As Jim's exposure will no longer be charged for, the premium on the Buick will reduce.

If Jim is to remain a driver, it will be necessary that an alternative market, at a higher cost, be obtained. The approximate cost would be $350 per year and it will allow principal usage of the vehicle described under the higher cost policy. This pro-

vides for liability only and, therefore, it would not be good to provide this special coverage for anything but an older vehicle (not requiring Collision and Comprehensive).

I am certain that many questions will remain and I would appreciate a call at your convenience.

> "Yours very truly,
> /sgd/ Craig
> CRAIG HANNUM"

The endorsement referred to in the letter contained the statement: "This endorsement * * * is effective 03-20-69 * * *." This was followed by a five line statement to the effect that no insurance was afforded to named insured while the automobile covered by the policy was operated by or under the control of James Knappenberger. Immediately below this statement of exclusion was a heading "ACCEPTANCE" under which the following appeared in bold face type: "I have read this endorsement and understand its content." The endorsement was signed in three places: "acknowledged" by Jim Knappenberger, "accepted" by Ruth Knappenberger and signed J. D. Knappenberger in the space calling for "Signature of Named Insured."[1] However, it is undisputed that J. D. Knappenberger had not signed the endorsement, his name having been written in by one of his sons. The endorsement was executed early in April although, as we have noted, the endorsement purported to be effective on March 20, 1969.

On April 13, 1969 after the endorsement had been executed the covered automobile was involved in an accident while under the control of James Knappen-

---

[1] No issue is made in this case as to the authority of Mrs. Knappenberger to act for and bind the insured.

berger. Defendant denied liability under the policy, whereupon plaintiffs filed the present suit.

If Mrs. Knappenberger had read the endorsement it would be clear from its express language that the exclusion of her son James from coverage was to be effective as of March 20, 1969, or at least that such coverage would be excluded after the execution of the endorsement.[2]

Plaintiffs' principal contention is that it was the duty of defendant to inform Mrs. Knappenberger of the effect of the endorsement and that the recitation in the endorsement purporting to make the exclusion effective prior to the anniversary date was not in itself sufficient to discharge defendant's duty to apprise the insured of the effect of the agreement. It is not contended that defendant was guilty of any fraud, or deliberate misrepresentation. But it is asserted that defendant, acting through Hannum, was guilty of inequitable conduct in failing to advise Mrs. Knappenberger of the effect of the endorsement.

1. In the absence of special circumstances a person who signs a written instrument embodying an agreement is bound by the terms of the agreement.[3] Plaintiffs argue that when Mrs. Knappenberger was advised that she would have to choose between losing coverage

---

[2] The exhibit constituting the evidence of the endorsement was introduced by defendant and is a carbon copy (except for the printed portions). The crucial date is struck over a printed line "Month-Day-Year" and is readable only on close inspection. Whether the typing strike-over also appears on the original or was simply the result of the careless alignment of the original and copies is not revealed. However, this is not important in our disposition of the case inasmuch as it was not made an issue.

[3] See Union Oil Co. of California v. Lull, 220 Or 412, 420, 349 P2d 243 (1960); 3 Corbin, Contracts § 607, p. 662 (1960); 1 Williston, Contracts § 90A, pp. 291-93 (3d ed 1957).

for her son James and the subsequent cancellation of the policy it "amounted to a form of economic coercion by the more powerful party to the contract." This is a part of plaintiffs' argument that an insurance contract "is not truly a contract of bargaining but of adhesion; that is, the insured purchases the contract, prepared solely by the insurer, which the insured seldom reads, but just assumes is what he ordered."[4]

2. We have recognized that the insurer's control over the bargain may be an important factor in determining the insured's rights under the policy.[5] But we did not intend to say that because the insured is normally in a disadvantageous position in bargaining for insurance coverage, he is free to disregard all of the principles of contract law the application of which prove to be inimical to his interests. As with other contracts of adhesion, in the absence of special circumstances an insured is bound by the terms of an insurance policy purchased by him even though he is unaware of those terms because he has failed to read the policy, or having read the policy misunderstands it.[6]

3. Plaintiffs rely on *Bunn v. Monarch Life Ins. Co.*, 257 Or 409, 478 P2d 363 (1970) in which he held if false statements appear in an application for insurance prepared by the insurer's agent, the insured is not estopped from claiming that the statements originated with the agent and

---

[4] The quoted language is taken from Pennsylvania Life Insurance Co. v. McReynolds, 440 SW2d 275 at 278 (Ky 1969), quoted with approval in Bunn v. Monarch Life Ins. Co., 257 Or 409, 478 P2d 363 (1970).

[5] Bunn v. Monarch Life Ins. Co., *supra*.

[6] See 16A Appleman, Insurance Law and Practice § 1943, pp. 430-34 (Rev Ed 1968); 1 Williston, Contracts §§ 90A, 94 (3d ed 1957); Restatement of Contracts §§ 70, 71 (1932).

not with the insured. The issue in that case was whether the insured misled the insurer into accepting a risk which it would not have accepted if it had known the truth. We held that the insured was not required to examine the application when it and the policy was delivered to him. We said, "It is unrealistic to assume that those purchasing life insurance would, upon receipt of the policy with the application attached, scrutinize the answers to the questions in the application to see if the answers comported with the information given to the insurer's agent." We did not say that the insured would not be bound by the terms of the policy itself or other instruments purporting to express the agreement between the insurer and the insured. Where one is asked to sign an instrument which has no purpose other than to memorialize some kind of an agreement between the parties, he is bound by the instrument he signs in the absence of evidence showing that he was misled or that there were other circumstances excusing him from scrutinizing the instrument. It is no defense to show that he did not read the instrument he signed.

4. In the present case Mrs. Knappenberger knew that the endorsement which she was asked to sign was intended to express an agreement between the insured and the insurer with respect to the coverage of her son James, and that she was asked to sign it in order to bind the insured and the insurer to the terms expressed in the instrument. The fact that the subject matter of the agreement related to insurance forms no basis for distinguishing this transaction in the present case from any other contractual transaction where admittedly a signatory is bound by the terms of the instrument he signs.

Plaintiffs argue that even though a special rule

is not made for insurance contracts, the endorsement here is not enforceable under the ordinary principles of contract law because defendant was guilty of inequitable conduct. Defendant is charged with failing to advise Mrs. Knappenberger of the existence and terms of the cancellation limitation in the policy and in failing to call to her attention the effective date of the exclusionary endorsement.

Admittedly Hannum knew that John Knappenberger was incapacitated and that Mrs. Knappenberger knew no more than the average housewife about business matters. However, the business transaction here involved was not a complicated one. Mrs. Knappenberger knew that defendant was attempting to exclude her son James from coverage and that if he were allowed to drive the covered automobile defendant would cancel the policy.[⑦] The only matter not explained was the effective date of the exclusion of coverage. Plaintiffs' argument is predicated upon the idea that Hannum should have been aware of the possibility that Mrs. Knappenberger might assume the effective date to be on the anniversary of the policy. We are not prepared to say that such a premise is or is not sound since we do not know whether under the circumstances of this case an average person in Mrs. Knappenberger's position would assume that coverage was to continue until the renewed policy took effect.

5. However, assuming plaintiffs' premise is sound, we are still left with the fact that the endorsement stated unequivocally that the effective date of the exclusion was to be March 20, 1969. Mr. Hannum could have assumed that Mrs. Knappenberger would be ap-

---

[⑦] Mrs. Knappenberger was informed of this position taken by defendant in a letter sent to her on March 17, 1969.

prised of the effective date specified in the endorsement unless he was required to assume that she would not read the instrument which she was asked to sign. This then brings us back to the initial inquiry as to whether those who sign insurance contracts are in a preferred position in the application of the rule that he who signs an instrument is bound by its terms. It is our conclusion that Hannum's conduct was not, under the circumstances, inequitable.

6. Plaintiffs also contend that the endorsement is not binding because the agreement lacks consideration. This contention is without merit. The endorsement recites that "in consideration of the * * * continuation of the policy" the insured agrees to the exclusion. Defendant was not obligated to renew the policy (assuming the requisite notice was given) and the agreement to continue the policy is adequate consideration to bind the agreement for exclusion.

The judgment is reversed.