Argued and submitted October 9, 1990; reassigned August 15, the decision of the Court of Appeals and the judgment of the circuit court reversed and remanded to circuit court with instructions December 12, 1991

## Stephen N. COLLINS,
*Respondent on Review,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
*Petitioner on Review.*

(CC A8712-07559; CA A51200; SC S37212)

822 P2d 1146

William G. Earle, of Hallmark, Keating & Abbott, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Robert K. Udziela, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, argued the cause for respondent on review. With him on the response to the petition was Robert J. Neuberger, Portland.

PETERSON, J.

## PETERSON, J.

This declaratory judgment proceeding concerns the amount of liability insurance available under the defendant's motor vehicle liability insurance policy. The plaintiff asserts that because an exclusion in the defendant's policy is "illegal," the exclusion must be disregarded, as a result of which $100,000 of insurance coverage is available. The defendant asserts that the exclusion is unenforceable only to the extent of the $25,000 mandated by the Financial Responsibility Law. We agree with the defendant.

Ernest and Irene Gali had a motor vehicle liability policy with the defendant, with liability limits of $100,000 per person and $300,000 per occurrence. Their nephew, the plaintiff, lived with them.

The defendant's policy contained these provisions, among others:

"Throughout this policy, 'you' and 'your' mean the 'named insured' shown in the Declarations and spouse if a resident of the same household. 'We,' 'us' and 'our' mean the Company named in the Declarations which provides this insurance."

"**Family member** means a person related to you by blood, marriage or adoption who is a resident of your household."

"**Insured person** means * * * you or any family member."

"We will pay **damages** for which any **insured person** is legally liable because of **bodily injury** to any person and **property damage** arising out of the ownership, maintenance or use of a **private passenger car**, a **utility car**, or a **utility trailer**." (Bold in original.)

The policy also contained exclusion 11(a):

"This coverage does not apply to * * * [l]iability for **bodily injury** to an insured person."

The plaintiff agrees that he was a "family member" who therefore comes within the definition of "insured person."

The policy also contained this sentence:

"Policy terms which conflict with laws of Oregon are hereby amended to conform to such laws."

In 1987, the plaintiff was injured while riding as a passenger in the Galis' car. At the time of the accident, the car

was being operated by the plaintiff's cousin, Stacey Gali, the daughter of Ernest and Irene Gali. The plaintiff made a claim for damages for bodily injuries. The defendant responded with this offer:

> "This letter is to communicate our offer of settlement of $25,000.00.
>
> "Our insured's policy limits are $100,000.00, but that limit does not apply because of exclusion #11 (a) of the policy, which reads 'This coverage does not apply to Liability for bodily injury to an insured person.'
>
> "The policy defines 'Insured Person' as 'you or any family member.' 'Family Member' is defined as 'a person related to you by blood, marriage or adoption who is a resident of your household.'
>
> "We understand that this exclusion does not apply to the 25/50 limits required by the financial responsibility statutes, and that is what our offer is based upon."

The plaintiff disagreed with the defendant that only $25,000 of coverage was available and filed a complaint for declaratory judgment, asserting that the exclusion quoted above is unenforceable and that, therefore, the full liability limit ($100,000) was available.

Both sides moved for summary judgment. The trial court granted the plaintiff's motion, denied the defendant's, and entered a judgment declaring that the insurance policy provides $100,000 liability coverage on the plaintiff's bodily injury claims. The Court of Appeals affirmed. *Collins v. Farmers Ins. Co.*, 101 Or App 463, 791 P2d 498 (1990).

■ Under Oregon law, every motor vehicle liability insurance policy issued for delivery in Oregon must, at the least, provide coverage in the amounts required by statute. ORS 742.450.[1] *See Viking Ins. Co. v. Petersen*, 308 Or 616,

---

[1] ORS 742.450 provides in part:

"(1) Every motor vehicle liability insurance policy issued for delivery in this state shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability.

"(2) Every motor vehicle liability insurance policy issued for delivery in this state shall contain an agreement or indorsement stating that, as respects bodily injury and death or property damage, or both the insurance provides either:

"(a) The coverage described in ORS 806.070 and 806.080; or

621, 784 P2d 437 (1989) (because statute listing mandatory contents of motor vehicle liability policy refers to statute stating minimum coverage requirements, every such policy must contain that coverage as a minimum). The minimum coverage for bodily injury to or death of one person in any one accident is $25,000. ORS 806.070(2)(a).

The only question before us concerns the effect of exclusion 11(a). Is the exclusion to be disregarded only as to the amount of the minimum liability coverage required by ORS 742.450 (and ORS 806.080)? Or is the exclusion to be disregarded totally? ORS 742.464 answers the question. It contains two sentences and three clauses:

"Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage, and such excess or additional coverage shall not be subject to the

---

"(b) The coverage described in ORS 806.270.

"(3) The agreement or indorsement required by subsection (2) of this section shall also state that the insurance provided is subject to all the provisions of the Oregon Vehicle Code relating to financial responsibility requirements as defined in ORS 801.280 or future responsibility filings as defined in ORS 801.290, as appropriate.

"(4) Every motor vehicle liability insurance policy issued for delivery in this state shall provide liability coverage to at least the limits specified in ORS 806.070."

ORS 742.450(2) refers to ORS 806.080, which in part requires:

"(1) A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:

"(a) It must be a policy or part of a policy designating, by explicit description or by appropriate reference, all motor vehicles for which coverage is provided by the policy.

"(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. The policy must include in its coverage all persons who, with the consent of the named insured, use the motor vehicles insured under the policy * * *.

"(c) It must provide the minimum limits of coverage required under ORS 806.070 [$25,000 because of bodily injury to or death of one person in any one accident; $50,000 because of bodily injury to or death of two or more persons in any one accident; and $10,000 for property damage]."

Some statutes cited in this opinion have been renumbered or altered in ways not relevant to this case since the issuance of the policy. Therefore, for ease of reference, we have used the current versions.

provisions of ORS 742.031, 742.400 and 742.450 to 742.464. With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections."

■    Each sentence and clause of ORS 742.464 has an unambiguous meaning. The first clause — "Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage" — means that liability insurers can write motor vehicle liability insurance policies with higher limits and coverage than that required by ORS 742.450, 806.080, and 806.270.

■    The second clause of the first sentence of ORS 742.464 — "and such excess or additional coverage shall not be subject to the provisions of ORS 742.031, 742.400 and 742.450 to 742.464" — means that the mandatory requirements of three statutes referred to in ORS 742.450 (ORS 806.070, 806.080, and 806.270) are inapplicable to the additional coverage. To make it absolutely clear, the legislature said it again, in a slightly different way, in the last sentence of ORS 742.464 — "With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections."

The manifest purpose of ORS 742.464 is to permit an insurer to write any other lawful coverage that the insurer wishes to write, in addition to the required coverage. Such coverage may include higher limits than those required by ORS 742.450 and 806.080. But as to such higher limits, the mandatory requirements of ORS 742.450 and 806.080 do not apply. The insurer may limit such additional coverage by any exclusion not otherwise prohibited by law.

To summarize, the law implies a provision in every motor vehicle liability insurance policy along these lines:

THIS POLICY PROVIDES ALL THE COVERAGE REQUIRED BY OREGON LAW, INCLUDING ORS 742.450, 806.080 AND 806.270.

Coverage other than that required by law may be limited by any lawful exclusion.

■ The next question is whether the defendant's policy limited the liability coverage to $25,000 as to the plaintiff's claim. Exclusion 11(a) of the plaintiff's policy (set forth above) is unambiguous; claims for bodily injury to family members are excluded from the liability coverage. The provision in the "Conditions" section that "[p]olicy terms which conflict with laws of Oregon are hereby amended to conform to such laws" is merely a statement of a rule of law that would be implied into the policy even if the statement were not contained therein.[2]

Because the import of ORS 742.464 is that coverage other than that required by law may be limited by any lawful exclusion, exclusion 11(a), although ineffective as to the first $25,000 of coverage, is effective as to any coverage in addition to $25,000.[3] Previous decisions of this court support this result.

In *Oregon Automobile Ins. Co. v. Thorbeck*, 283 Or 271, 583 P2d 543 (1978), a liability insurer issued a motor vehicle liability policy to the insured with limits of $100,000. A financial responsibility filing was made with the Motor Vehicles Division. The insured subsequently failed to make the premium payments, and the policy was canceled by notice to the insured. However, the company failed to file a notice of cancellation with the Motor Vehicles Division as required by *former* ORS 486.506(2). At that time, the minimum financial

---

[2] In this connection, note ORS 742.038(2), which states:

"Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with the Insurance Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."

[3] The dissent asserts, 312 Or at 350-52, that ORS 742.464 requires that the policy "grant" the minimum coverage of the Financial Responsibility Law before the policy can lawfully exclude family-household members from the other coverage. The dissent claims that the defendant's "policy did *not grant* liability coverage to the insured for claims made by family members"; therefore, the exclusion is to be disregarded. *Id.* at 352 (emphasis in original).

Accepting the dissent's point that ORS 742.464 requires the policy to *grant* the coverage required by law, the policy states: "Policy terms which conflict with laws of Oregon are hereby amended to conform to such laws." That is one way of granting coverage. Not the best way, perhaps, but the meaning of the sentence is clear.

responsibility policy limit was $10,000. The opinion stated the issue this way:

> "The issue in this case is whether, given the failure to file the notice of cancellation, the limit of the company's responsibility is $10,000, the amount required by the [Financial Responsibility] Law, or $100,000, the original amount of the policy. The company appeals from a judgment of the trial court that the limit of the company's liability is $100,000." 283 Or at 273.

As here, the case turned on *former* ORS 486.541 (*current* ORS 742.450) and *former* ORS 486.566 (*current* ORS 742.464):

> "The company contends that ORS 486.566 [*current* ORS 742.464] exempts it from responsibility under the policy except for the amount of $10,000 required by the Law. Defendants, on the other hand, contend that ORS 486.566 [*current* ORS 742.464] has nothing to do with the issue of policy 'limits' but by its terms has only to do with the separate issue of policy 'coverage.' They argue that 'coverage' refers only to the risks insured against while 'limits of liability' refers to the monetary amount of insurance. To show that the legislature distinguished between the two, they point to ORS 486.541 [*current* ORS 742.450], which separately mentions 'the coverage afforded' and 'the limits of liability.'

> "To decide this case it is our duty to divine the legislature's intent in using the word 'coverage' in ORS 486.566 [*current* ORS 742.464]. No cases cited by the parties or found by the court are of help to us because none involves a statute with similar wording. In common usage 'coverage' is frequently employed in a general way to include both the risks insured against and the monetary amount of insurance, as in the question, 'How much is your coverage?' Being mindful of the distinction made in ORS 486.541 [*current* ORS 742.450], we could bring ourselves to agree with defendants that 'coverage' has a more limited statutory meaning were it not for the particular wording of ORS 486.566 [*current* ORS 742.464], which speaks of 'coverage in excess of or in addition to' the coverage required by the provisions of the Law. It is our observation that the word 'excess' is used in connection with monetary limits of insurance and not in connection with types of risks insured against. It is therefore our opinion that the legislature, by its use of such word, intended the provisions of the statute to encompass not only the risk insured

against but also the monetary amount of insurance." 283 Or at 274-75.

The court held that only $10,000, the limit required by the Financial Responsibility Law, was available.

Granted, *Thorbeck* does not involve the precise issue presented here. Its holding is significant, however, because the opinion makes it clear that the word "excess" as used in ORS 742.464 refers to the monetary amount of insurance above the amount required by the Financial Responsibility Law and that, even though the cancellation notice did not comply with the Financial Responsibility Law, the notice was otherwise lawful between the insurer and the insured as to the "excess" coverage. Similarly, the exclusion involved here, as between the insured and the insurer, is valid and enforceable as to any amount exceeding the minimum required by the Financial Responsibility Law.

*Hartford Acc. and Indem. v. Kaiser*, 242 Or 123, 407 P2d 899 (1965), also confirms this result. In that case, the insurer had issued a motor vehicle liability insurance policy to Jacob Kaiser, Sr., with limits of $25,000 for each injured person and $100,000 for each accident. The amounts then required by the Financial Responsibility Law were $5,000 and $10,000, respectively. The policy, however, contained two specific endorsements. One was to exclude any coverage for Jacob Kaiser, Jr. A second provided that the insurer agreed to provide the supplemental coverage necessary to satisfy Oregon's financial responsibility statutes.

The issue presented was whether the larger limits of the policy or the statutory minimum limits applied to injuries that occurred when Jacob Kaiser, Jr., was driving. The court stated:

"We find no basis in the Oregon statutes for denying insurance companies the right to exclude certain named individuals from the full-face-value coverage of a policy so long as they cover the same individuals to a limited degree as 'omnibus insureds' when they choose to write the minimum coverage required by the financial-responsibility statutes.

"A fair reading of the entire contract confines Hartford's exposure to the statutory minimum under ORS 486.021 whenever Jacob Kaiser, Jr., is operating an insured automobile. The main policy excluded coverage for accidents

caused by Jacob Kaiser, Jr. This it may do. *See Schaffer v. Mill Owners Mut. Ins. Co.*, 242 Or 150, 407 P2d 614 (1965)." 242 Or at 126.

Although the *Kaiser* opinion does not make specific reference to *current* ORS 742.464 *(former* ORS 486.566 (1965)), the holding is clear. An insurance company can exclude some persons from the higher coverage limits of a policy, so long as it provides the minimum coverage required by the financial responsibility statutes.

Finally, our recent decision in *State Farm Fire and Casualty Co. v. Jones*, 306 Or 415, 759 P2d 271 (1988), is relevant. In *Jones*, the insured was injured while riding as a passenger in her own automobile. She sued the driver, who was an additional insured under her automobile liability policy. As here, the policy excluded liability coverage for bodily injury to "any insured." The insured claimed that the exclusion violated the Financial Responsibility Law, specifically ORS 806.080(1).

This court agreed that the policy violated the Financial Responsibility Law. 306 Or at 420-21. Concerning the limits of liability, the court stated in a footnote:

"We also note that the limit of liability for each person's bodily injury under defendant's policy apparently amounts to $50,000. This exceeds that required by statute at the time of defendant's injury. *Former* ORS 486.011(7)(a) (1981) ($15,000 for bodily injury to or death of one person). We do not express an opinion as to the extent of plaintiff's liability to defendant or the driver on this score. *But cf. Hartford Acc. and Indem. v. Kaiser*, 242 Or 123, 407 P2d 899 (1965)." 306 Or at 421 n 5.

The footnote is significant. The case was remanded to the trial court "for proceedings consistent with this opinion." On remand, the same issue now presented here likely would arise. (The trial court had not reached the issue, because it held that *no* coverage existed.) The *Jones* footnote suggested that the answer to the issue may lie in *Hartford Acc. and Indem. v. Kaiser, supra*, and suggested approval of the *Kaiser* opinion in the context of the issue presented in the case at bar.

The Financial Responsibility Law requires specified coverage. As to amounts and other coverage apart from that minimum, it is lawful to restrict that additional coverage by an exclusion. Under ORS 742.464 and the decisions cited above, the exclusion is enforceable as to coverage other than that required by the Financial Responsibility Law. This exclusion was not illegal. The defendant's motion for summary judgment should have been granted.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court with instructions to grant the defendant's motion for summary judgment.

**UNIS, J.,** dissenting.

The majority opinion, unfortunately, provides a *disincentive* to insurance companies to issue insurance policies that affirmatively, candidly, and truthfully — and with clarity and certainty — reveal the extent of their and the insureds' reciprocal rights and obligations. The majority's holding offends the public policy of promoting fair and equitable business practices that underlies state regulation of the insurance industry.[1] Moreover, the majority's holding has the potential to dissuade insurance companies from precisely identifying in their contracts of insurance, as required by Oregon law, *see* ORS 742.450 (discussed *infra*), the basic terms of the insurance contract (here, the coverage afforded by the policy and the limits of liability — specifically, the monetary limitation of the insurer's liability for bodily damages sustained by a family member).[2] In so doing, the majority rewards an insurance company for selling an insurance

---

[1] "Insurance law is * * * a hybrid mixture of private contractual law and state statutes which seek to control the substantive terms of the insurance policy so that the insured may enter into a fair and equitable contract. *See, e.g.*, Kimball, *The Purpose of Insurance Regulation*, 45 Minn L Rev 471, 490-91 (1961)."

Fischer and Swisher, Principles of Insurance Law 665 (1986).

State financial responsibility laws are also "designed to ensure motor vehicle drivers can respond in damages for liability. Such laws * * * seek to ensure that motor vehicle accident victims are compensated for injuries received." *State Farm Fire and Casualty Co. v. Jones*, 306 Or 415, 418, 759 P2d 271 (1988).

[2] The phrase "family member," as used in the opinion, means a person who is related to the insured by blood, marriage, or adoption, and who resides in the insured's household. *See infra* note 6.

policy that it did not certify under Oregon's Financial Responsibility Law (FRL)[3] and that it should have known did not comply with FRL because it contained an exclusion which improperly denied liability coverage required by FRL.[4]

Farmers Insurance Company of Oregon (Farmers) issued the insurance policy at issue in this case. It includes a family-household exclusion clause[5] in an automobile insurance policy which excludes from liability coverage any claim for bodily injuries brought by a person who is related to and resides in the insured's household. That clause conflicts with Oregon's FRL because FRL requires a minimum liability coverage for nearly all bodily injury claims. With some exceptions in ORS 742.454, ORS 742.450, by reference to ORS 806.080 and its incorporation of ORS 806.070, requires a minimum of $25,000 bodily injury coverage for a person in any one accident. The general liability coverage under the insurance policy in this case provides $100,000 bodily injury coverage per person and $300,000 coverage per occurrence. The issue here is how much liability coverage is provided by the policy for bodily injury to a family member for whom the attempted exclusion is invalid.

The insurance policy contained exclusion 11(a): "This coverage does not apply to * * * [l]iability for *bodily injury* to an insured person."[6] (Emphasis in original). ORS 742.450, however, provides in part:

"(1) Every motor vehicle liability insurance policy issued for delivery in this state shall state the name and address of the named insured, the coverage afforded by the

---

[3] ORS 806.070(2)(a); *see generally* ORS 742.449 *et seq*; ORS Chapter 806. The current statutes are used throughout this opinion. Some of the statutes have been renumbered, and some have been altered slightly since the issuance of Farmers' policy in this case. None of those changes are relevant to the issue presented in this case.

[4] *See infra* note 7.

[5] "The primary purpose of the family-household exclusion clause is to protect the insurer against collusive or friendly lawsuits." *Lee v. State Farm Auto. Ins.*, 265 Or 1, 5, 507 P2d 6 (1973). "Insurers believe[] that the opportunities for fraudulent claims would be significantly reduced if claims between family members could be precluded." Keeton and Widiss, Insurance Law, A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices 393, § 4.9 (Practitioner's ed 1988).

[6] Farmers' policy defines "insured person" to include "any family member." "Family member" is defined as "a person related to [the insured] by blood, marriage or adoption who is a resident of [the insured's] household."

policy, the premium charged therefor, the policy period, and the limits of liability.

"(2) Every motor vehicle liability insurance policy issued for delivery in this state shall contain an agreement or indorsement [sic] stating that, as respects bodily injury and death or property damage, or both, the insurance provides either:

"(a) The coverage described in ORS 806.070 and 806.080; or

"(b) The coverage described in ORS 806.270.

"(3) The agreement or indorsement [sic] required by subsection (2) of this section shall also state that the insurance provided is subject to all the provisions of the Oregon Vehicle Code relating to financial responsibility requirements as defined in ORS 801.280 or future responsibility filings as defined in ORS 801.290, as appropriate.

"(4) Every motor vehicle liability insurance policy issued for delivery in this state shall provide liability coverage to at least the limits specified in ORS 806.070."

ORS 806.080 provides in part:

"(1) A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:

"* * * * *

"(c) It must provide the minimum limits of coverage required under ORS 806.070."

ORS 806.070(2)(a) provides that the minimum coverage because of bodily injury is $25,000. Farmers acknowledges that the family-household exclusion in provision 11(a) of its policy violates FRL because that law requires minimum liability coverage for nearly all bodily injury claims.[7] The

---

[7] In *Dowdy v. Allstate Insurance Co.*, 68 Or App 709, 685 P2d 444, *rev den* 298 Or 172 (1984), decided *before* the effective date of Farmers' policy in the present case, the Court of Appeals held that a similar family-household exclusion violated ORS 486.011(7) (which is now ORS 806.070(2)(a)) of FRL, which requires minimum liability coverage of $25,000 for bodily injury.

In *Viking Ins. Co. v. Petersen*, 308 Or 616, 621, 784 P2d 437 (1989), this court held that all motor vehicle policies issued in Oregon must meet FRL requirements, ORS Chapter 806.

Until recently, the effect of the family-household exclusion was fully consistent with the public policies underlying interspousal immunity and parental immunity. Each of these limitations on tort liability has been judicially abrogated. *See Heino v.*

Court of Appeals has so held in *Dowdy v. Allstate Insurance Co.*, 68 Or App 709, 685 P2d 444, *rev den* 298 Or 172 (1984), following the logic that because ORS 742.454[8] listed several classes of people that liability insurance policies need not insure, they, by implication, must insure those classes (including family members) not listed.[9] Because family members cannot be excluded entirely from coverage, the minimum liability coverage for bodily injury to a family member is $25,000, as provided by ORS 806.070(2)(a).

Thus, ORS 742.450, 806.070(2)(a), and 806.080 require that Farmers' insurance policy provide $25,000 coverage for family members by operation of law. The exclusion in provision 11(a) of Farmers' policy, therefore, was ineffective. The issue, then, is whether Farmers' liability coverage for a claim made by a family member is the full amount of liability coverage otherwise provided in the policy or whether the liability coverage is limited to the lesser amount required by FRL. ORS 742.464 discusses the requirements of additional excess coverage:

> "Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage, and such excess or additional coverage shall not be subject to the provisions of ORS 742.031, 742.400 and 742.450 to 742.464. With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections."[10]

---

*Harper*, 306 Or 347, 759 P2d 253 (1988) (common-law rule of interspousal immunity no longer available to bar negligence action between spouses); *Winn v. Gilroy*, 296 Or 718, 681 P2d 776 (1984) (doctrine of general parental immunity for negligent injury to minor children abrogated).

[8] *Former* ORS 486.546.

[9] In addition, ORS 742.450(5), adopted by Oregon Laws 1991, Chapter 768, section 3, allows limited exclusions from a motor vehicle liability insurance policy under specific circumstances, including that the person excluded be excluded "by name."

[10] The word "coverage" in the statute includes both the risks which are insured against and the amount of insurance provided in the policy. *Oregon Automobile Ins. Co. v. Thorbeck*, 283 Or 271, 275, 583 P2d 543 (1978).

The majority argues: The insured's policy provides liability coverage of $100,000 per person; FRL requires minimum liability coverage of $25,000 per person for family members; the policy "grants excess or additional coverage," *i.e.*, $75,000 in liability coverage in excess of the $25,000 minimum; the family-household exclusion is legal and enforceable when applied to this excess coverage; the liability coverage for family members is, therefore, the minimum liability coverage required by FRL, *i.e.*, $25,000 per person.

The majority's argument is flawed. Farmers' policy does *not* grant the required coverage. It cannot, therefore, limit the excess coverage. The only way the family-household exclusion can apply to limit the excess coverage provided by the policy is if the policy grants the statutorily-required minimum. The first sentence of ORS 742.464 begins, "Any policy which *grants* [required] coverage * * *." (Emphasis added.) The first sentence of ORS 742.464 concludes that "such excess or additional coverage [*i.e.*, where the required minimum has first been granted] shall not be subject to the provisions of ORS 742.031, 742.400 and 742.450 to 742.464." That is, if the policy first *grants* the required minimum $25,000 coverage for family members, it may exclude them from excess coverage without being bound by ORS 742.454 as to the excess coverage.[11] The last sentence of ORS 742.464 confirms that interpretation by stating that the requirements of the statutes surrounding and including ORS 742.454 do not apply to excess coverage "[w]ith respect to a policy which grants such excess or additional coverage." I would hold that, by implication, the requirements of ORS 742.454 *do* apply to excess or additional coverage in a policy which does not grant the required minimum.

In other words, ORS 742.454, as construed in *Dowdy v. Allstate Insurance Co., supra,* prevents the insurer from excluding family members from coverage. Where an insurance policy does not grant the statutorily-required minimum coverage, ORS 742.464 does not render ORS 742.454 inapplicable to excess coverage. Therefore, where an insurance

---

[11] ORS 742.454 was part of the basis for the Court of Appeals' holding in *Dowdy v. Allstate Insurance Co., supra,* that family members could not be excluded from coverage.

policy does not grant the statutorily-required minimum coverage, ORS 742.454 prevents the insurer from excluding family members from the excess coverage under the general liability provision.

By its own terms, Farmers' policy did *not grant* liability coverage to the insured for claims made by family members. Rather, the policy, by its own terms, *denied* such coverage. It is that denial of liability coverage that brings into play ORS 742.450, which requires motor vehicle liability policies to conform to FRL. *See Viking Ins. Co. v. Petersen*, 308 Or 616, 621, 784 P2d 437 (1989) ("[E]very motor vehicle liability insurance policy issued in this state [is required] to provide for statutory minimum limits of coverage").[12] Further, ORS 742.450(1) requires that "[e]very motor vehicle liability policy * * * *shall state * * * the coverage afforded by the policy * * * and the limits of liability*." (Emphasis added.) Farmers' policy improperly states that there is no coverage for family members. The only provision in Farmers' policy which states limits of liability grants $100,000 coverage. The only way for Farmers' policy to comply with ORS 742.450 is, therefore, for the $100,000 limit to apply to family members.

In other words, the policy is forced by operation of law to provide, *but does not grant*, liability coverage to the insured for claims made against the insured by family members. The majority's argument that, after the coverage is provided by operation of law, the exclusion of provision 11(a) should apply to limit the excess coverage in the insurance policy to the statutory minimum is wrong because ORS 742.464 says it is wrong. *If the insurer wishes to exclude from excess coverage persons required by implication of ORS 742.454 to be covered for the statutory minimum, it must first affirmatively grant the statutorily-required minimum coverage for those persons*, ORS 742.464, *and must state the limits of liability*, ORS 742.450(1).

_____

[12]

"ORS 742.450 requires that all motor vehicle liability insurance policies issued in Oregon contain insurance coverage in accordance with ORS 806.070, 806.080, and 806.270. This means that such policies must include the same provisions required by financial responsibility requirements."

*Viking Ins. Co. v. Petersen, supra*, 308 Or at 621.

The distinction between an insurance policy that grants the required liability coverage by its own terms and an insurance policy that provides the required liability coverage by operation of law is consistent with the purpose of the statutory provisions regulating insurance companies. Making the distinction meaningful encourages insurance companies to provide clear notice of the coverage to insureds (*i.e.*, to grant the coverage) that is conferred by law in order to gain limited liability. A danger exists in allowing insurance companies to rely on the statutory law's automatic inclusion of FRL minimum limits of liability coverage in insurance policies. The danger is that an insured and other parties "might assume that [the contract provisions] are lawful and mean what they say and might thereby forego making claims for coverage that Oregon law requires [insurance companies] to provide." *Collins v. Farmers Ins. Co.*, 101 Or App 463, 467 n 3, 791 P2d 498 (1990). A commentator expresses the policy behind this concern:

> "No insurance system can be fair and equitable where would-be insureds are deprived of the opportunity to participate intelligently in the system because of some obfuscating factor beyond their control."

Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades*, 51 Ohio State L J 823, 853 (1990).[13] ORS 742.450 demonstrates that the Oregon legislature was concerned that insurance policies explicitly state basic terms in order to inform insureds of the coverage provided.[14]

---

[13] *See* 1 Appleman, Insurance Law and Practice, Preface at xxx (Rev ed 1981) ("one must remember that the [appellate] decisions * * * represent only those situations where the matter has been presented to a reviewing court. For every such citation, there are ten or more instances where an insurer has simply denied liability on the basis of the policy terminology and the matter has never gone to court. Most policyholders assume that the company knows how to interpret its contract").

[14] *See also* ORS 806.080, which provides in part:

"(1) A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:

"(a) It must be a policy or part of a policy designating, by *explicit description* or by appropriate reference, all motor vehicles for which coverage is provided by the policy.

"(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. The policy must include in its coverage all persons who, with the consent of the named insured, use the

The majority contends that a conformity clause in the policy conforms the family-household exclusion to comply with FRL. The language on which the majority relies is contained in Part V, section 2, of the policy:

"PART V — CONDITIONS

"* * * * *

"2. Changes

"This policy with the Declarations includes all agreements between you and us relating to this insurance. No other change or waiver may be made in this policy except by endorsement, new declarations or new policy issued by us.

"The premium for each term of this policy is determined by information in our possession at the inception of that term. Any changes in this information which would affect the rating of your policy will allow us to make an additional charge or refund on a pro rata basis. If a premium adjustment is necessary we will make the adjustment as of the effective date of the change.

"When we broaden coverage during the policy period without charge, the policy will automatically provide the broadened coverage when effective in your state. We may make other changes or replace this policy to conform to coverage currently in use at the next policy period. The change or new policy will be delivered to you, or mailed to you at your mailing address shown in the Declarations at least 30 days before the effective date of the new policy period.

"*Policy terms which conflict with laws of Oregon are hereby amended to conform to such laws.*" (Emphasis added.)

The majority's argument rests on the italicized language (conformity clause). For several reasons, however, the conformity clause does not have the effect that the majority suggests. First, the syntax of the conformity clause and its placement in the "Changes" section of the policy suggest that the conformity clause is limited in its application solely to those policy terms

---

motor vehicles insured under the policy, except for any person specifically excluded from coverage under ORS 742.450." (Emphasis added.)

Further, ORS 746.075(5), (6), and (7) prohibit persons in the offer or sale of any insurance, directly or indirectly, from employing any device, scheme, or artifice to defraud, or to obtain money or property by means of an untrue statement of a material fact or a misleading omission to state a material fact, or to engage in any transaction or practice calculated to operate as a fraud or deceit to the purchaser, insured or person with policy ownership rights.

contained in the "Changes" section and does not have general applicability to other provisions of the policy, such as the family-household exclusion. This conclusion is buttressed by the existence of other conformity clauses in the policy, which specifically limit Farmers' liability to FRL requirements. For example, one of the other conformity clauses in the policy states:

"Exclusions

"* * * * *

"5.   Bodily injury or property damage for any person while employed or otherwise engaged in the business or occupation of transporting, selling, repairing, servicing, storing or parking of vehicles designed for use mainly on public highways, including road testing or delivery. This exclusion does not apply to the ownership, maintenance or use of your insured car by you, any family member, or any partner, agent, or employee of you or any family member. This exclusion also does not apply to any other person who does not have other insurance available to him with limits equal to at least those of the Oregon Financial Responsibility Law. *In such event the insurance afforded that person will be limited to the requirements of the Oregon Financial Responsibility Law.*" (Emphasis added.)

Another conformity clause in the policy reads:

"Limits of Liability

"* * * * *

"1.   The bodily injury liability limit for 'each person' is the maximum for bodily injury sustained by one person in any occurrence. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit. *If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, financial responsibility limits will be furnished.*" (Emphasis added.)

Additionally, another provision in Farmers' policy reads:

"Conformity with Financial Responsibility Laws

"When we certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by the law."

Farmers concedes that it did *not* certify the policy it issued to the insured in this case under FRL. Farmers does not, therefore, rely on this last-quoted provision to support its assertions.

With the exception of the last quoted provision, each of the other conformity clauses is placed at the end of the particular provision in the policy that it is intended to modify and applies only to that provision. In contrast, the conformity clause on which Farmers relies is in the "Changes" section, which is located *four pages* from the family-household exclusion.

The "Changes" section generally deals with *when* and *how* policy terms may be changed and premiums may be adjusted *after* the policy has been issued. If the conformity clause is limited in its application solely to the policy terms contained in the "Changes" section, as one possible interpretation above suggests, then the conformity clause applies only to changes in Oregon law that occur *after* the policy was issued to the insured. There have been no changes in Oregon law on the issue presented to this court in this case since Farmers issued its policy to the insured. *See supra* note 7. The conformity clause would not, therefore, amend the family-household exclusion to comply with FRL as the majority suggests.

Second, the family-household exclusion does not speak to the *amount* of liability coverage; rather, it deals with *who* may make claims against the insured for bodily injuries under the policy. The only way to conform an exclusion of persons entitled to make claims is to eliminate the exclusion and allow the claim. Deleting the family-household exclusion clause from the policy would have no effect on the amount of liability coverage for claims against the insured made by family members. In other words, the liability coverage provided by Farmers' policy for bodily injury claims ($100,000 per person and $300,000 per occurrence) applies to *all* bodily injury claims made against the insured.

Third, even if the conformity clause does apply to the family-household exclusion, as the majority suggests, and even if the exclusion does speak to the amount of coverage, an ambiguity exists because the policy could be "amended to

conform" to satisfy FRL requirements in at least two ways. One of those ways is by deleting the family-household exclusion entirely from the policy. In that event, the policy's $100,000 per person liability coverage for bodily injuries would also apply to any family member injured in an accident. The exclusion also could be amended to provide the minimum amount of liability coverage for bodily injuries required by FRL, i.e., $25,000 per person. The specific language in the other conformity clauses, quoted above, specifically limits Farmers' liability to FRL minimum requirements. The conformity clause on which Farmers relies, however, mentions neither liability limits nor FRL. Accordingly, the deletion of the family-household exclusion clause is the appropriate method of amending the policy to conform to FRL requirements. This is the only way for the policy to comply with ORS 742.450(1), which requires the policy to "state * * * the coverage afforded by the policy * * * and the limits of liability." Thus, proper application of the conformity clause requires deletion of the exclusion and reliance on the general liability amounts stated in the policy.

Fourth, the conformity clause is ambiguous at best. Under the doctrine of *contra proferentum* (or the doctrine of ambiguities), the policy is strictly construed against Farmers, who drafted the policy, and construed in favor of extending liability coverage of $100,000 per person for claims made by family members to the non-drafting party, the insured. *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 320, 273 P2d 212, 275 P2d 226 (1954); *Shadbolt v. Farmers Insur. Exch.*, 275 Or 407, 411, 551 P2d 478 (1976). "[I]nsurance policies, especially * * * exclusion clauses, must be strictly construed against the insurer." *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc., supra*, 202 Or at 304-05.

Finally, even if the conformity clause were intended to apply to the exclusion in provision 11(a), it cannot effectively amend that clause as the majority suggests because, as I have pointed out, pursuant to ORS 742.464, coverage for family members can be limited to the statutory minimum *only if* the statutory minimum is *granted*, which it was not. The conformity clause does nothing more than state the obvious — that some terms not included in the policy will be

implied or amended by operation of law.[15] If the conformity clause or implication of law constitutes a grant of coverage, the term "grant" in ORS 742.464 is meaningless.

In fact, other conformity clauses in the policy not affecting the exclusion in clause 11(a) use language which did provide the statutory minimum coverage. One such clause stated: "If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, *financial responsibility limits will be furnished.*" (Emphasis added.) Even this provision by reference to FRL is notice to the insured that the otherwise total exclusion is not absolute.

My interpretations of ORS 742.464 and of the application of the conformity clause are consistent with, and mandated by, a 1965 decision of this court. The majority totally misunderstands *Hartford Acc. and Indem. v. Kaiser*, 242 Or 123, 407 P2d 899 (1965), which presented a situation very similar to the one in this case.[16] An insurance policy excluded the insured's son from the main provision of insurance coverage. A special endorsement to the policy specified that the policy provided the statutory minimum requirement for the insured's son. There existed a statutorily-required minimum coverage for the insured's son. The question presented was exactly that presented in this case: Was the coverage for the insured's son limited to the statutory minimum, or was it the amount provided in the insurance policy's main provision for liability coverage?[17]

---

[15] The majority agrees with this statement when it states that "[t]he provision in the ['Changes' section of the] 'Conditions' section that '[p]olicy terms which conflict with laws of Oregon are hereby amended to conform to such laws' is merely a statement of a rule of law that would be implied into the policy even if the statement were not contained therein." 312 Or at 343.

It is beyond me how the majority acknowledges this and still maintains that the conformity clause is itself a *grant* of coverage. *See* 312 Or at 343 n 3.

[16] I agree with the majority that *Hartford Acc. and Indem. v. Kaiser*, 242 Or 123, 407 P2d 899 (1965), helps answer the issue in this case. 312 Or at 346.

I do not agree with the majority, however, that the statement in *State Farm Fire and Casualty Co. v. Jones, supra*, 306 Or at 421 n 5, that "[w]e do not express an opinion as to the extent of plaintiff's liability" somehow suggests the answer. 312 Or at 346.

[17] This is an entirely different issue from the one presented in *Oregon Automobile Ins. Co. v. Thorbeck, supra,* and the majority's reliance on *Thorbeck* is misplaced. 312 Or at 343-45. *Thorbeck* involved a policy that had been effectively cancelled, but where the notice of cancellation was not given to the Motor Vehicles

Under a statutory system very similar to the current system, this court determined that only the statutory minimum applied. The analysis demonstrates why a different result is required in the case at bar:

"We find no basis in the Oregon statutes for denying insurance companies the right to exclude certain named individuals from the full-face-value coverage of a policy *so long as* they cover the same individuals to a limited degree as 'omnibus insureds' when they choose to write the minimum coverage required by the financial-responsibility statutes." (Emphasis added.)

*Hartford Acc. and Indem. v. Kaiser, supra*, 242 Or at 126. The exclusion was valid only "so long as" the policy covered the excluded person to the minimum amount required by law. In that case, the policy did so; it included a special endorsement which expressly granted the statutory minimum to the individual excluded from complete coverage. The insurance policy in *Hartford*, in effect, read:

"Full Coverage:       We will provide excess coverage beyond the minimum required by statute for the insured, but not for insured's son.

"FRL Coverage:       We will provide the minimum coverage for insured's son as required by statute."

In *Hartford*, therefore, it made complete sense to apply only the statutory minimum rather than complete coverage to the insured's son because the policy granted the required minimum coverage, but excluded the coverage beyond the minimum required.

My analysis of ORS 742.464 produces exactly the same result. If Farmers' policy in the case at bar had *granted* rather than *excluded* the minimum statutory requirement, the limitation to that statutory minimum would not only be allowed under ORS 742.464, but it would be consistent with the policy underlying insurance law because the insured then has notice of the coverage in the policy. It is precisely *because* Farmers' policy did not grant, but *excluded*, even the statutory minimum coverage that ORS 742.464 and *Hartford Acc.*

---

Division as required by statute. 283 Or at 273. Therefore, there was *no* policy; there was *only* a continuous statutory duty.

*and Indem. v. Kaiser, supra,* require that the complete exclusion of Farmers' clause 11(a) did not limit the liability to the statutorily-required minimum. I would hold that Farmers' policy provided for $100,000 liability coverage for bodily injury to a member of the insured's family.

Even assuming, *arguendo,* that the majority's interpretation that the conformity clause is itself the basis for a grant of coverage such that excess coverage could be limited, the majority, by enforcing that interpretation against the insured, seems to suggest without deciding that the insured has the duty to read and understand not only clear insurance terms and policies, but also complex terms and their relationship to each other, to the statutory requirements, and to case law.[18] If that is the majority's position, it is inappropriate for the majority to suggest without deciding that this duty exists and to base its decision on this unsupported duty. It is important to analyze why imposing this duty to read and understand the policy is neither clearly required nor clearly rejected by past decisions of this court.

Two competing decisional approaches to interpreting insurance contracts have evolved: (1) the "traditional" or "formalist" approach;[19] and (2) the "functional" or "reasonable expectation" approach. *See* Fischer & Swisher, Principles of Insurance Law 2 (1986).

Under the "traditional" or "formalist" approach, the court looks to the "four corners" of the insurance policy and interprets it by applying rules applicable to all contracts in general. *Id.* The insured is held to have read and to have understood the clear language of the policy. Extrinsic evidence relating to the insurance contract may be examined for

---

[18] The majority makes no attempt to explain how an insured can be expected to understand the policy. If the insured asked the agent for $100,000 liability coverage and then read the policy and understood only the clause granting $100,000 liability coverage, the insured would expect $100,000 liability coverage for bodily injury to a family member. If the insured also understood clause 11(a) and its relation to several other provisions defining its terms, the insured would assume $0 liability coverage for bodily injury to a family member. If the insured also understood the conformity clause as the majority interprets it and understood its relationship to the other policy and statutory provisions and case law as interpreted by the majority, the insured would expect $25,000 liability coverage for bodily injury to a family member.

[19] This approach is sometimes referred to as the "interpretive approach." *See* Jerry, Understanding Insurance Law 94-98 (1987).

the purpose of determining the parties' intention to an objective analysis of the "four corners" of the contract.

Language supporting the "traditional" or "formalist" approach can be found in several decisions of this court. The following excerpts are illustrative:

"[T]he primary and governing rule for the construction of insurance contracts, as of all other contracts, is to ascertain and declare the intention of the parties. In applying this rule, the contract must be considered as a whole, and, in some instances, resort may be had to extrinsic circumstances attending the execution of the agreement. All other rules of construction are secondary and are designed for the purpose of aiding in the application of the primary rule."

*I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc., supra,* 202 Or at 317.

"Contracts of insurance must have effect like all other written contracts. The intention of the parties must govern and control, and when the language is plain and unambiguous, such intention must be gathered from such language. In such case the court simply ascertains the language the parties themselves have agreed to and written down in their contract and enforces it according to its legal effect."

*Weidert v. State Ins. Co.,* 19 Or 261, 269-70, 24 P 242 (1890).

"[A]n insurance company is entitled to have its contract enforced as it is written."

*Ausman v. Eagle Fire Ins.,* 250 Or 523, 529-30, 444 P2d 18 (1968).

"The obligation of [an insurer under an automobile liability policy] is measured by the policy alone."

*Roemhild v. Home Ins. Co.,* 130 Or 50, 57, 278 P2d 87 (1929).

The rationale behind the "formalist" approach is that contracts of insurance rest upon and are controlled by the same principles of law that apply to other contracts, and the parties to an insurance contract may provide such provisions as they deem proper as long as the contract does not contravene law or public policy. *Clark Motor Co. v. United Pac. Ins. Co.,* 172 Or 145, 149, 139 P2d 570 (1943). *See also Brown v. Equitable Life Ins. Co.,* 60 Wis 2d 620, 211 NW2d 431, 435 (1973).

The competing approach to insurance contract interpretation — the "functional" or "reasonable expectation" approach — is that the policyholder's reasonable expectations to coverage under the insurance policy should be honored even though those expectations vary from the policy provisions. *See generally* Keeton & Widiss, Insurance Law, A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices, § 6.3 (Practitioner's ed 1988); Henderson, *supra*; Keeton, *Insurance Law Rights at Variance with Policy Provisions: Part One*, 83 Harv L Rev 961 (1970); Keeton, *Insurance Law Rights at Variance with Policy Provisions: Part Two*, 83 Harv L Rev 1281 (1970); Jerry, Understanding Insurance Law 99 (1987).

The "functional" or "reasonable expectation" approach is supported by the notion that insurance contracts are not ordinary contracts negotiated by parties with roughly equal bargaining strength. Rather, they are largely contracts of adhesion,[20] where the insurance company, in preparing a standardized printed form, has the superior bargaining position, and the insured has to accept such a policy on a "take-it-or-leave-it" basis if the insured wants any form of insurance protection. *See Standard Oil Company of California v. Perkins*, 347 F2d 379, 383 n 5 (9th Cir 1965) (" 'Adhesion contract' is a handy shorthand descriptive of standard form printed contracts prepared by one party submitted to the other on a 'take it or leave it' basis. The law has recognized there is often no true equality of bargaining power in such contracts and has accommodated that reality in construing them."); *Reeves v. The Chem Industrial Co.*, 262 Or 95, 101, 495 P2d 729 (1972) (defining an adhesion contract as a "take-it-or-leave-it" contract that is the product of unequal bargaining power between the parties); *Knappenberger v. Cascade Ins. Co.*, 259 Or 392, 398, 487 P2d 80 (1971) (insurance contract is ordinarily viewed as an adhesion contract, as the insured rarely has any control over the "bargain"). *See also*

---

[20] The term "contract of adhesion" apparently was first used in Patterson, *The Delivery of a Life-Insurance Policy*, 33 Harv L Rev 198, 222 (1919). *Standard Oil Company of California v. Perkins*, 347 F2d 379, 383 n 5 (9th Cir 1965). Patterson defined a "contract of adhesion" as a "contract [that] is drawn up by the insurer and the insured, who merely 'adheres' to it, has little choice as to its terms." Patterson, *supra*, at 222. The term "contract of adhesion" was coined by Raymond Saleilles as "contract d' adhesion" in Saleilles, De La Declaration de Volonte 229 (1901).

Rakoff, *Contracts of Adhesion: An Essay in Reconstruction*, 96 Harv L Rev 1174 (1983); Kessler, *Contracts of Adhesion: Some Thoughts About Freedom of Contract*, 43 Colum L Rev 629 (1943).

For example, in *Prudential Insurance Co. v. Lamme*, 83 Nev 146, 425 P2d 346-47 (1967), the Nevada Supreme Court said:

"[A]n insurance policy is not an ordinary contract. It is a complex instrument, unilaterally prepared, and seldom understood by the [insured] * * *. The parties are not similarly situated. The company and its representatives are expert in the field; the applicant is not. A court should not be unaware of this reality and subordinate its significance to strict legal doctrine."[21]

For similar expressions, *see Zuckerman v. TransAmerica Ins. Co.*, 133 Ariz 139, 650 P2d 441 (1982); *Gray v. Zurich Ins. Co.*, 65 Cal 2d 263, 54 Cal Rptr 104, 419 P2d 168, 171 (1966); *Allen v. Metropolitan Life Ins. Co.*, 44 NJ 294, 208 A2d 639 (1965).

Restatement (Second) of Contracts, § 211 (1981), "[r]epudiates the 'four-corners' ['traditional' or 'formalist'] approach to contract interpretation in the standardized agreement setting and in effect approves a doctrine of 'reasonable expectations.' " Jerry, Understanding Insurance Law 99 (1987). Comment b to section 211 of the Restatement states:

"A party who makes regular use of a standardized form of agreement does not ordinarily expect his customers to understand or even to read the standard terms. * * * Customers do not in fact ordinarily understand or even read the standard terms. They trust to the good faith of the party using the form and to the tacit representation that like terms are being

---

[21] "As stated by Herbert S. Denenberg, former Pennsylvania Insurance Commissioner: 'According to a scientific scale of readability, the standard auto insurance policy is actually more difficult to read and understand than Einstein's Theory of Relativity. We think a policyholder is entitled to a policy he can understand without the aid of a task force of Philadelphia lawyers, a magnifying glass and the Oxford English Dictionary.' "

13 Appleman, Insurance, Preface at III (1976 rev ed). This is, of course, an overstatement, but suggestive of the difficulty that arises in interpreting insurance contracts.

accepted regularly by others similarly situated. But they understand that they are assenting to terms not read or not understood, subject to such limitations as the law may impose."

Comment e to section 211 states:

"Apart from government regulation, courts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it."

Comment f to section 211 states:

"Although customers [insureds] typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation. * * * a party [insured] who adheres to the other party's [the insurer's] standard terms does not assent to a term if the other party has reason to believe that the adhering party would not have accepted the agreement if he had known that the agreement contained the particular term."[22]

A growing number of courts use the "functional" approach to protect the "reasonable expectations" of the insured policyholder from possible denial of coverage that might result under the "traditional" or "formalist" contractual analysis of an insurance policy.[23]

---

[22]

"The American Law Institute clearly contemplated that insurance transactions were within the purview of section 211 at the time it was drafted. The Reporter's Note cites the Keeton article, among others, and a number of the cases discussed in the article in support of the new section and the exception to it. Restatement (Second) of Contracts § 211 at 124 (1981)."

Henderson, *The Doctrine of Reasonable Expectations in Insurance Law After Two Decades*, 51 Ohio State L J 823, 845 n 110 (1990).

[23] One commentator states that the following states have adopted the "reasonable expectations" doctrine: Alabama, Alaska, Arizona, California, Iowa, Montana, Nebraska, Nevada, New Hampshire, and New Jersey. Henderson at 828. Six other jurisdictions may have adopted the "reasonable expectation" doctrine, but decisions from those six jurisdictions are not entirely free from ambiguity. *Id.* at 829. "[T]here are nine states whose courts have declared that the ["reasonable expectation"] doctrine has not been adopted." *Id.* at 834. At least 25 other states (including Oregon) have not expressly adopted, nor expressly rejected, the "reasonable expectation" approach either because the courts have not really addressed the issue, or because it is not clear whether the doctrine would be utilized in the absence of any policy ambiguity. *Id.* at 835-38.

There is no disagreement between the "formalist" and the "functional" approaches whenever the insurance policy is ambiguous or susceptible to two or more reasonable interpretations. Under the doctrine of *contra proferentum* (or the doctrine of ambiguities), the policy will be strictly construed against the insurer who drafted the policy, and the policy will be liberally construed in favor of the non-drafting party, the insured. *See* Keeton & Widiss at 628-630; 2 Couch, Cyclopedia of Insurance Law § 15.74 (2d ed 1984); 13 Appleman, Insurance Law & Practice § 7401 (1976 rev ed).

The doctrine of *contra proferentum* is firmly established in Oregon. *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc., supra,* 202 Or at 320. *See also Shadbolt v. Farmers Insur. Exch., supra,* 275 Or at 411 ("[W]e have said many times that if there is an ambiguity in the terms of an insurance policy, any reasonable doubt as to the intended meaning of such terms will be resolved against the insurance company and in favor of extending coverage to the insured." (Footnote omitted)).[24]

This court has not explicitly adopted the doctrine of "reasonable expectation," at least by name, in any of its forms. Neither has this court explicitly rejected it. Language in at least two of our recent opinions, however, suggests support for the doctrine. In *Totten v. New York Life Ins. Co.,* 298 Or 765, 771, 696 P2d 1082 (1985), this court said: "We interpret the terms of an insurance policy according to what we perceive to be the understanding of the ordinary purchaser of insurance." That principle is also stated in *Botts v. Hartford Acc. & Indem. Co.,* 284 Or 95, 100, 585 P2d 657 (1978). Moreover, various past members of this court have expressed their preference for the "reasonable expectation" approach, *see, e.g., Lewis v. Aetna Insurance Co.,* 264 Or 314, 323-24, 505 P2d 914 (1973) (Bryson, J., specially concurring, joined by McAllister, J.).

At some point, this court will have to address this series of conflicting precedents in our cases which today's majority opinion simply ignores.

---

[24] *See also* ORS 42.260.

For the foregoing reasons, I would hold that the full amount of liability coverage provided in Farmers' policy ($100,000 per person and $300,000 per occurrence) applies to plaintiff's injuries, and not the minimum amount of liability coverage ($25,000) required by FRL. I would, therefore, affirm the decision of the Court of Appeals, but for different reasons. I would affirm the judgment of the circuit court.

Van Hoomissen and Fadeley, JJ., join in this dissenting opinion.